MORRIS FRYDMAN, Plaintiff-Appellant, v. HORN EYE CENTER, LTD., Defendant-Appellee.

First District (6th Division)   No. 1—96—2338

Opinion filed February 21, 1997.—Rehearing denied March 21, 1997.

Alan Benjamin Miller, of Highland Park, for appellant.

George B. Collins and Christopher Bargione, both of Collins & Bargione, of Chicago, for appellee.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff Morris Frydman, who is not a physician, filed a complaint against defendant Horn Eye Centers, Inc., a medical corporation, alleging breach of an employment contract. The trial court dismissed plaintiff's complaint with prejudice, finding that the agreement upon which plaintiff based his claim for breach of employment contract was illegal and unenforceable because it contravened the Medical Corporation Act (805 ILCS 15/1 *et seq.* (West 1992)), the Medical Practice Act of 1987 (225 ILCS 60/1 *et seq.* (West 1992)), and the public policy of Illinois.

On appeal, plaintiff primarily asserts that the trial court erred in finding that the agreement provided for plaintiff to be president of defendant and have an ownership interest in defendant, which were the bases of determining there was a violation of the Medical Corporation Act. Plaintiff also contests the trial court's findings that his compensation as stated in the agreement constituted illegal fee splitting under the Medical Practice Act of 1987 and public policy, and that he impermissibly participated in management activities. Lastly, plaintiff contends that the trial court's ruling results in inequity and unjust enrichment.

We affirm the dismissal with prejudice of plaintiff's complaint, finding that the agreement on which plaintiff relies clearly provides for plaintiff to be president of and have an ownership interest in defendant. Section 13 of the Medical Corporation Act prohibits a non-physician from being an officer or director of a medical corporation and from having any ownership interest in such a corporation. 805 ILCS 15/13 (West 1992).

Defendant, formerly known as Laser and Ocular Surgery Associates of Chicago, was incorporated in 1986 and is a medical corporation registered in Illinois that provides medical and surgical ophthalmology services. Gerald Horn is a physician and has been the only president, director and shareholder of defendant since its incorporation. Plaintiff is not a physician and is not licensed to practice medicine.

Plaintiff bases his cause of action on a June 6, 1989, letter, which he authored and addressed to Gerald Horn. The letter provides in pertinent part as follows:

> "As we discussed, this letter is intended to reduce to writing the general understanding and agreement we have reached regarding my association with the Horn Eye Centers. Starting on May 16, 1989 and through December 31, 1989 I will devote no less than sixty percent of my time executing my responsibility as President

of Horn Eye Centers. My direct compensation for this will be in two forms—$6,000 per month and an equity position in the company. The monetary compensation shall accrue until such time as the liquidity of the company permits payment. The equity position shall consist of five percent initially and shall be increased as follows:

> an additional five percent on the occurrence of equity funding to Horn Eye Center acceptable to you or the completion of financing a minimum of $150,000 working capital fund;

> an additional five percent on the anniversary of my first year of employment;

> an additional five percent on the anniversary of my second year of employment;

All of the equity awarded to me shall be prefinancing equity subject to dilution as a result of financing. Beginning January 1, 1990 I will devote full time to the duties of being President of Horn Eye Centers when my direct compensation shall increase to $10,000 per month.

Until December 31, 1989, you shall have the right to terminate my employment upon three months notice. From January 1, 1990 through December 31, 1990 you shall have the right to terminate my employment upon six months notice. After December 31, 1990 you shall have the right to terminate my employment upon one year notice.

* * *

The objectives to be achieved as a result of my efforts shall include the following:

> a minimum increase of available funds in the amount of $150,000;

> a minimum cash flow surplus of $15,000 monthly;

> funding through operation additional compensation to you and Laura [Horn's wife] in the amount of $12,500 per month beginning January 1, 1990; this will result in your direct compensation of $20,000 per month and $2,500 per month to Laura."

Plaintiff began his employment with defendant on May 16, 1989, and was terminated on April 17, 1990. In his complaint, plaintiff alleged that he performed numerous tasks during his tenure with defendant, including negotiating a bank loan, meeting with potential equity investors, developing marketing programs, developing cash flow projections, supervising defendant's marketing manager and administrative manager, interviewing employment applicants, hiring and discharging certain employees of defendant, supervising employee performance reviews and setting their compensation, negotiat-

ing leases and subleases for office spaces, designing accounting systems, serving as liaison with defendant's outside certified public accountants, managing office and administrative staff, handling state agency problems, negotiating for insurance, renegotiating supply arrangements with suppliers, supervising the production of defendant's television commercials, preparing defendant's policies and procedures manual, and preparing defendant's employees' manual.

On April 23, 1990, after his discharge, plaintiff sent a letter to Horn regarding a proposal for severance. Plaintiff proposed that his "earned equity be cashed out at $100,000" and the total amount due him was $130,000.

On May 31, 1990, Horn responded to plaintiff's proposal by letter stating that Horn was "astounded" by plaintiff's requests and characterized them as "nothing short of a hold up." Horn maintained that plaintiff was "on a month to month retainer as a consultant."

On July 17, 1990, plaintiff's attorney, Elliott Levine, wrote a letter to Horn in an attempt to resolve their differences. In this letter, plaintiff's counsel stated:

"The label of month to month consultant is unrealistic given the surrounding facts, not only the commitments made and executed by [plaintiff] in detrimental reliance of more than a transient relationship, but in public and official designation of President; The Presidential status was not mere title, but was an important and pervasive declaration as such with the attendant authority, in fact, by virtue of the by-laws, resolutions and agency powers granted, exercised and relied on by others."

On November 1, 1995, plaintiff filed a complaint alleging breach of employment contract and seeking monetary damages in the amount of $790,950. On March 7, 1996, defendant filed a motion to dismiss pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1992)), asserting that the contract violates the Medical Corporation Act.

On May 24, 1996, the trial court entered a four-page order granting defendant's motion to dismiss with prejudice. The trial court noted that the Medical Corporation Act prohibits anyone who is not licensed under the Medical Practice Act from having any part in the "ownership, management or control" of a medical corporation. 805 ILCS 15/13 (West 1992). The trial court found that, in contravention of section 13 of the Medical Corporation Act, the writing upon which plaintiff relies as a contract provides that plaintiff, who is not a physician, would assume the role of president and receive an equity position in a medical practice. In addition, plaintiff engaged in numerous management activities that support the position that the agree-

ment provided for plaintiff to own, manage or control defendant in violation of section 13 of the Medical Corporation Act. The trial court also found that the agreement constitutes illegal fee splitting, because plaintiff's compensation was tied to defendant's revenues, which in turn would depend upon the receipt of medical fees.

On appeal, plaintiff first asserts that the agreement did not provide for plaintiff to be president of defendant and, in fact, was never made president. Plaintiff argues that a distinction should be made regarding the status of president as a job title and corporate officer. Plaintiff directs attention to defendant's description of his position as an "administrative consultant" in defendant's answer to plaintiff's first set of interrogatories, to Horn's affidavit attached to defendant's reply to plaintiff's response to its motion to dismiss in which Horn attested that he was president, and to the corporate resolution of defendant that lists Horn as president.

Defendant contends that the letter agreement upon which plaintiff relies specifically provides for plaintiff to be president, in violation of the Medical Corporation Act, which requires the officers of a medical corporation to be licensed physicians. Defendant argues that the fact that the corporate records reflect Horn was president and the fact that plaintiff was never elected president are irrelevant because plaintiff bases his cause of action on the writing, which provided for plaintiff to be president and, thus, the agreement is illegal and unenforceable. We agree.

■ Section 2—619(a)(9) of the Code of Civil Procedure authorizes the involuntary dismissal of a complaint where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 1992). Such motion should be granted where there is no disputed issue of fact and the affirmative matter negates the plaintiff's cause of action completely or refutes critical conclusions of law or conclusions of material, unsupported fact. *Waterford Executive Group, Ltd. v. Clark/Bardes, Inc.*, 261 Ill. App. 3d 338, 343 (1994).

Our review of a section 2—619(a)(9) motion to dismiss "is limited to consideration of the legal questions presented by the pleadings, but such review is independent and need not defer to the trial court's reasoning." *Waterford Executive Group*, 261 Ill. App. 3d at 344. Accordingly, we apply a *de novo* standard of review. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993); *Dace International, Inc. v. Apple Computer, Inc.*, 275 Ill. App. 3d 234, 237 (1995). Our inquiry is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie*

& *103rd Currency Exchange*, 156 Ill. 2d at 116-17; *Garcia v. Metropolitan Property & Casualty Insurance Co.*, 281 Ill. App. 3d 368, 371 (1996). On review, we may consider admissions in the record and exhibits that are attached to the pleadings. *Pearson v. Lake Forest Country Day School*, 262 Ill. App. 3d 228, 231 (1994), citing *Fahey v. State & Madison Property Ass'n*, 200 Ill. App. 3d 437, 440 (1990) (and authorities cited therein). Moreover, a section 2—619(a)(9) motion accepts all well-pleaded facts in the complaint as true as well as the reasonable inferences to be drawn from those facts. *Waterford Executive Group*, 261 Ill. App. 3d at 343.

■ Whether or not a contract is clear or ambiguous is a question of law for the court. *Groshek v. Frainey*, 274 Ill. App. 3d 566, 569 (1995). The language in a contract is not rendered ambiguous merely because the parties disagree upon its meaning. *Continental Mobile Telephone Co. v. Chicago SMSA Ltd. Partnership*, 225 Ill. App. 3d 317, 323 (1992). In any event, a court cannot rewrite a contract to provide a better bargain to suit one of the parties. *Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d 105, 112 (1993).

■ Where an agreement is unambiguous, the intent of the parties must be determined, as a matter of law, from the writing itself. *Groshek*, 274 Ill. App. 3d at 570. Clear and unambiguous contract terms must be given their ordinary and natural meaning, and no parol or extrinsic evidence may be considered to vary the meaning of the terms. *Bond Drug Co. v. Amoco Oil Co.*, 274 Ill. App. 3d 630, 634 (1995). "Unless the agreement unequivocally specifies special meanings, the court must interpret the words of the contract with their common and generally accepted meanings." *Dow v. Columbus-Cabrini Medical Center*, 274 Ill. App. 3d 653, 657 (1995), citing *USG Interiors, Inc. v. Commercial & Architectural Products, Inc.*, 241 Ill. App. 3d 944 (1993).

■ In light of these fundamental contract principles, plaintiff's attempts to circumvent the express language of the letter agreement are disingenuous. Plaintiff bases his claim for breach of employment contract on the June 6, 1989, letter agreement, which expressly provides that plaintiff would hold the position of president. The letter states in relevant part:

> "Starting on May 16, 1989 and through December 31, 1989 I will devote no less tha[n] sixty percent of my time executing my responsibility as *President of Horn Eye Centers*. \*\*\* Beginning January 1, 1990 I will devote full time to the duties of being *President of Horn Eye Centers* \*\*\*." (Emphasis added.)

We find no legal or logical reason to depart from the clear terms of the agreement regarding the provisions that plaintiff would as-

sume and hold the position of president. Moreover, in his complaint, plaintiff declares that the agreement provided that "[t]he job title Plaintiff Morris Frydman was to have [was] *President.*" (Emphasis added.) Furthermore, following his discharge, plaintiff emphasized his designation as president in a July 17, 1990, letter from plaintiff's attorney to Horn in which plaintiff refuted Horn's characterization of plaintiff as a consultant.

> "The *Presidential* status was not mere title, but was an important and pervasive declaration as such with the attendant authority, in fact, by virtue of the by-laws, resolutions and agency powers granted, exercised and relied on by others." (Emphasis added.)

Section 13 of the Medical Corporation Act forbids a person who is not a licensed physician, such as plaintiff, from holding the office of president:

> "All of the officers, directors and shareholders of a corporation subject to this Act shall at all times be persons licensed pursuant to the Medical Practice Act of 1987. No person who is not so licensed shall have any part in the ownership, management, or control of such corporation, nor may any proxy to vote any shares of such corporation be given to a person who is not so licensed." 805 ILCS 15/13 (West 1992).

"[I]t is well settled in Illinois that if a contractual agreement expressly contravenes a law or a policy of the State, that contract will be deemed illegal and unenforceable." *Purcell & Wardrope Chartered v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1081 (1988); *Coronet Insurance Co. v. Ferrill*, 134 Ill. App. 3d 483 (1985).

The contract upon which plaintiff relies clearly provided that plaintiff assume and hold the position of president, an office which the Medical Corporation Act expressly forbids him from occupying, and thus is illegal and unenforceable. To hold otherwise or accept the distinction proffered by plaintiff mocks the plain language of the agreement.

Applying the same fundamental contract principles, we also reject plaintiff's contention that the phrase "equity position in the company," as stated in the agreement, did not constitute ownership.

The agreement at issue provides that plaintiff would receive two forms of compensation from defendant, *i.e.*, a sum certain each month and "an equity position in the company." The monetary compensation was to begin at $6,000 per month and later increase to $10,000 per month. The equity position was to "consist of five percent initially" and to increase an additional 5% in three stated intervals.

The rules of contract construction provide that the words of a contract are to be given their ordinary meaning unless it clearly ap-

pears from the document that the parties intended them to have a peculiar and unusual meaning. *In re Marriage of Shaner*, 252 Ill. App. 3d 146, 159 (1993).

Among the definitions provided for the word "equity" is "a risk interest or *ownership* right in property." (Emphasis added.) Webster's Third New International Dictionary 769 (1986).

Section 13 of the Medical Corporation Act prohibits any person other than a licensed physician from having "any part in the ownership" of a medical corporation. 805 ILCS 15/13 (West 1992). We find that the compensation based upon a percentage of "an equity position in the company" constitutes a plan to transfer an impermissible ownership interest in defendant under the Medical Corporation Act. Thus, the agreement is also illegal and unenforceable based on the impermissible ownership interest accorded plaintiff by the agreement.

In light of our finding the contract is illegal and unenforceable for the foregoing reasons, we need not and do not address the remaining arguments. We affirm the dismissal of plaintiff's complaint with prejudice.

Affirmed.

THEIS and ZWICK, JJ., concur.