FIFTH DIVISION
February 4, 2011

No. 1-10-0158

| | | |
|---|---|---|
| SCOTT R. CARLSON, Individually and as Coexecutor of the Estate of Eleanor Carlson, Deceased; NANCY I. LYONS, Individually and as Coexecutor of the Estate of Eleanor Carlson, Deceased; and SHEILA O'GARA, Individually and as successor Coexecutor; | ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellants, | ) ) | No. 08 L 10138 |
| v. | ) ) | |
| GLUECKERT FUNERAL HOME, LTD, an Illinois Corporation; and JOHN GLUECKERT, JR., | ) ) ) ) ) | Honorable Charles Winkler, Judge Presiding. |
| Defendants-Appellees. | | |

JUDGE EPSTEIN delivered the judgment of the court, with opinion.

Justices Joseph Gordon and Howse concur in the judgment and opinion.

**OPINION**

Plaintiffs-appellants Scott R. Carlson, Nancy I. Lyons, and Sheila O'Gara filed the instant lawsuit against defendants-appellees Glueckert Funeral Home, Ltd., and John Glueckert, Jr., seeking damages relating to a funeral contract and defendants' handling of the remains of Eleanor Carlson. The circuit court involuntarily dismissed plaintiffs' complaint pursuant to defendants' motion, ruling, *inter alia*, that as a matter of law defendants were shielded from liability under the Illinois Disposition of Remains Act (755 ILCS 65/1 *et seq.* (West 2008)) (the Act). The trial court denied plaintiffs' motion to reconsider and this appeal followed. For the following reasons, we affirm.

## BACKGROUND

Eleanor Carlson died on September 15, 2007. Eleanor was survived by her son, Scott Carlson, her estranged daughter, Denise Fardelos, and her sister, Nancy Lyons. Plaintiffs allege that approximately one month earlier, on August 10, 2007, Eleanor appointed Scott and Nancy co-executors of her last will and testament. Eleanor also appointed Scott and Nancy successor co-trustees of her support trust, of which Eleanor was the primary trustee. Sheila O'Gara, Eleanor's niece, was appointed as successor cotrustee of the trust in the event that Nancy was unable to perform her duties. Eleanor's will and trust provided that on her death all of her property, including the trust estate, was to be distributed to Scott. In her trust documents, Eleanor expressly excluded Denise from her estate. Plaintiffs allege that on August 10, 2007, Eleanor also executed a power of attorney for health care form, appointing Scott as her agent to, *inter alia*, direct the disposition of her remains after her death.

On September 17, 2007, Scott contacted Glueckert Funeral Home to arrange for Eleanor's funeral and burial. Scott met with Matt Bennett, Glueckert Funeral's director, to make the necessary arrangements and allegedly presented Bennett with Eleanor's power of attorney, will, and trust documents as proof of his authority to direct the disposition of her remains. Scott then executed a form contract with Glueckert Funeral specifying the type and cost of the funeral arrangements. Bennett informed Scott that the funeral would be held three days later, on September 20, 2007. Glueckert Funeral subsequently took possession of Eleanor's body. After the funeral arrangements were set, however, Denise allegedly contacted Glueckert Funeral and demanded that other, more expensive, arrangements be made. Glueckert Funeral contacted Scott and informed him that the

funeral would be delayed due to the dispute. Scott objected to the delay and expressed concern for the effect it would have on Eleanor's unembalmed body. John Glueckert, Glueckert Funeral's employee, allegedly responded that deterioration would not be a problem and the body could be stored at their facility indefinitely.

On September 28, 2007, Glueckert Funeral transferred Eleanor's body to the Lake County coroner's office. Glueckert Funeral subsequently informed plaintiffs that it considered Eleanor's body abandoned, that transfer of the body to the coroner was necessitated by an investigation being conducted by the police into the circumstances of Eleanor's death, and that it had not refrigerated her body over the last 11 days. Soon thereafter, the coroner informed Scott that it was in possession of Eleanor's body, which was extensively decayed. On October 11, 2007, Scott obtained a court order requiring the release of Eleanor's body, the details of which are not of record. Scott then made arrangements with another funeral home, and Eleanor was buried on October 18, 2007.

On September 12, 2008, plaintiffs filed the instant lawsuit, bringing claims for breach of contract, common law fraud, consumer fraud, intentional infliction of emotional distress, and "interference with the next of kin's right to possess and preserve the decedent's body." Defendants moved to involuntarily dismiss plaintiffs' complaint pursuant to section 2-619(a)(9) of the Illinois Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2008)), arguing: (1) Scott's power of attorney was legally insufficient because it was neither notarized nor signed by him; (2) the power of attorney terminated on Eleanor's death; and (3) section 50 of the Act shielded defendants from liability related to their handling of Eleanor's remains. Plaintiffs responded that Scott's power of attorney granted him the authority to direct the disposition of Eleanor's remains; Denise lacked

standing to challenge that authority; section 50 of the Act was inapplicable; and unspecified unresolved issues of material fact precluded dismissal.

On July 9, 2009, the circuit court summarily granted defendants' motion to dismiss, stating:

"1) The Court finds as a matter of law that because of the dispute between the decedent's children as to the disposition of her remains, Defendant is not liable to Plaintiffs pursuant to 755 ILCS [65]/1 (Illinois Disposition of Remains Act).

2) The Court further finds as a matter of law that the decedent's Power of Attorney Form had no legal effect because it specifically stated that it terminated upon her death."

On December 17, 2009, plaintiffs' motion to reconsider was denied. This appeal followed.

ANALYSIS

On appeal, plaintiffs raise only two arguments. First, they contend the circuit court erred in ruling that Scott's power of attorney expressly terminated on Eleanor's death. Second, they contend the circuit court erred in ruling that a legal dispute existed between Eleanor's children. We will address each argument in turn.

"Section 2-619(a)(9) of the Code of Civil Procedure authorizes the involuntary dismissal of a complaint where 'the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim.' [Citation.] Such [a] motion should be granted where there is no disputed issue of fact and the affirmative matter negates the plaintiff's cause of action completely or refutes critical conclusions of law or conclusions of material, unsupported fact. [Citation.]

4

Our review of a section 2-619(a)(9) motion to dismiss 'is limited to consideration of the legal questions presented by the pleadings, but such review is independent and need not defer to the trial court's reasoning.' [Citation.] Accordingly, we apply a *de novo* standard of review. [Citations.] Our inquiry is 'whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' [Citation.]" *Frydman v. Horn Eye Center*, 286 Ill. App. 3d 853, 857-58 (1997).

### I. Power of Attorney

Eleanor's power of attorney form states:

"I, ELEANOR V. CARLSON, do hereby appoint my son, SCOTT R. CARLSON, of Chicago, Illinois, as my attorney-in-fact (my 'Agent'), to make any and all decisions for me concerning my personal care, medical treatment, hospitalization care and to require, withhold or withdraw any type of medical treatment or procedure, even though my death may ensue. *** My agent shall also have full power to make a disposition of any part or all of my body for medical purposes, authorize an autopsy and direct the disposition of my remains.

\* \* \*

ABSENT AMENDMENT OR REVOCATION, THE AUTHORITY GRANTED IN THIS POWER OF ATTORNEY WILL BECOME EFFECTIVE AT THE TIME THIS POWER IS SIGNED AND WILL CONTINUE UNTIL YOUR DEATH, AND BEYOND IF ANATOMICAL GIFT, AUTOPSY OR DISPOSITION OF REMAINS

IS AUTHORIZED, UNLESS A LIMITATION ON THE BEGINNING DATE OR

DURATION IS MADE BY INITIALING AND COMPLETING EITHER OR

BOTH OF THE FOLLOWING:

> 3.      This power of attorney shall become effective on *execution*.

> 4.      This power of attorney shall terminate on *my death unless sooner amended or revoked*." (Emphasis added.)

The form is signed by Eleanor and dated August 10, 2007. With the exception of the italicized language, which was added by Eleanor, the wording of the power of attorney form is standard, taken from article IV of the Illinois Power of Attorney for Health Care Law (755 ILCS 45-4/10 (West 2008)), which provides a suggested short form for granting the power of attorney for health care. The italicized language appears where article IV provides blank spaces to be completed by the principal.

Plaintiffs argue that Eleanor did not initial paragraph 4 and so it never became effective. Defendants respond that plaintiffs waived their right to raise that argument on appeal because plaintiffs did not argue it before the circuit court. It is true that "points not argued before the trial court generally may not be raised for the first time on appeal." *Village of South Elgin v. Waste Management of Illinois, Inc.*, 348 Ill. App. 3d 929, 933 (2004). Here, however, in response to defendants' motion to dismiss before the circuit court, plaintiffs argued that the power of attorney form granted Scott the power to direct the disposition of Eleanor's remains, and in plaintiffs' motion to reconsider, they specifically argued that paragraph 4 required Eleanor's initials to be effective. Further, the circuit court obviously considered that issue as it was one of the expressed bases of its ruling. Plaintiffs did not waive their right to argue the validity of Scott's power of attorney on appeal.

"A written power of attorney must be strictly construed so as to reflect the 'clear and obvious intent of the parties.' " *Fort Dearborn Life Insurance Co. v. Holcomb*, 316 Ill. App. 3d 485, 499 (2000) (quoting *Crawford Savings & Loan Ass'n. v. Dvorak*, 40 Ill. App. 3d 288, 292 (1976)). The power of attorney form at issue here purports to grant Scott the power, as Eleanor's attorney-in-fact, to direct the disposition of her remains after her death unless certain temporal limitations are enumerated *and* initialed. Two limitations are enumerated; neither is initialed. Thus, those limitations, including the provision stating that Scott's power of attorney terminated on Eleanor's death, did not modify or revoke the language stating that Scott's power to direct the disposition of Eleanor's remains continued beyond her death.

Defendants argue, however, that this reading of the power of attorney form is circuitous because the limitation in paragraph 4 follows paragraph 3, which states that the power of attorney will take effect once executed. Defendants argue that "Eleanor did not initial this paragraph either so if paragraph 4 is not effective for want of initials, then paragraph 3 must also fail. Without paragraph 3, the power of attorney never took effect." We disagree. The power of attorney form plainly states that the power granted therein becomes effective when signed, August 10, 2007. As we have already stated, paragraph 3 was never initialed and therefore did not modify this provision. The circuit court's ruling that Scott's power of attorney expressly terminated at Eleanor's death was erroneous. Nevertheless, for the reasons stated below, we decline to reverse the judgment of the circuit court.

## II. The Disposition of Remains Act

The second question presented, whether the disagreement between Scott and Denise as to the disposition of Eleanor's remains constitutes a "dispute" under the Act, is one of statutory

construction. It is, as far we can discern, a question of first impression.

> "The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. [Citation.] The best evidence of legislative intent is the language of the statute, and when possible, the court should interpret the language of a statute according to its plain and ordinary meaning. [Citation.] We do not construe words and phrases of a statute in isolation; instead, all provisions of a statute are viewed as a whole. [Citation.] 'Legislative intent can be ascertained from a consideration of the entire Act, its nature, its object and the consequences that would result from construing it one way or the other.' [Citation.] Thus, we are not bound by the literal language of a statute if that language produces absurd or unjust results not contemplated by the legislature." *In re Donald A.G.*, 221 Ill. 2d 234, 246 (2006).

Although the circuit court referenced only section 1 of the Act - the short title provision - in its order, it is apparent from the structure of the statute that the court relied on section 50, which states:

> "Any dispute among any of the persons listed in Section 5 [(755 ILCS 65/5 (West 2008))] concerning their right to control the disposition, including cremation, of a decedent's remains shall be resolved by a court of competent jurisdiction. A cemetery organization or funeral establishment shall not be liable for refusing to accept the decedent's remains, or to inter or otherwise dispose of the decedent's remains, until it receives a court order or other suitable confirmation that the dispute has been resolved or settled." 755 ILCS 65/50 (West 2008).

8

Put another way, section 50 provides that: (1) any disputes between persons listed in section 5 concerning the disposition of a decedent's remains are to be resolved by a court; and (2) funeral homes and cemeteries will not be liable for their refusal to accept, inter, or otherwise dispose of the decedent's remains while such disputes are ongoing.

Plaintiffs argue:

"Since Eleanor's Power of Attorney did not terminate upon her death and she clearly left directions in writing designating an agent to direct the disposition of her remains *** the 'people' listed in subsections 1-4 of §5 [(755 ILCS 65/5(1) through (4) (West 2008))] never got the right to dispute Scott's directions. As a result it is unnecessary to inquire about whether Denise was one of the 'persons' listed in subsections (1) through (9) of Section 5 [(755 ILCS 65/5(1) through (9) (West 2008))] who could dispute Scott's right to control the disposition of Eleanor's remains. Because that person was Scott and Scott alone, no one else was authorized to dispute his directions."

Defendants respond, in relevant part, that regardless of whether Scott has the right to direct the disposition of Eleanor's remains, a dispute concerning that right existed between Scott and Denise. We agree.

Section 50 does not limit its reach to only those persons whose assertions of right are later adjudged valid and well-founded, as plaintiffs argue. The reason for this is obvious enough. It is not the role of funeral homes and cemeteries to judge the relative legal rights of feuding family members. That task is left to the courts and for good reason. Section 50 expressly applies to any dispute

between persons listed in section 5, which includes the decedent's competent adult children. 755 ILCS 65/5(4) (West 2008). Plaintiffs' argument to the contrary is conclusory and goes against the plain meaning of the Act. Further, there was clearly a "dispute" between Eleanor's surviving adult children concerning the disposition of her remains. The term "dispute" is not defined in the Act. Under its plain and ordinary meaning, however, a dispute is "[a] conflict or controversy; a conflict of claims or rights; an assertion of a right, claim, or demand on one side, met by contrary claims or allegations on the other." Black's Law Dictionary 472 (6th ed. 1990). The conflicting assertions of rights by Scott and Denise, in the plain and ordinary sense of the term, qualify as a dispute concerning control over the disposition of Eleanor's remains. Therefore, the circuit court did not err in concluding that a dispute existed between Eleanor's children and its judgment is affirmed.

## CONCLUSION

For all the foregoing reasons, the judgment of the Cook County circuit court is affirmed.

Affirmed.