2022 IL App (2d) 210244
No. 2-21-0244
Opinion filed April 14, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| ANNA DANIELS, as Special Administrator of the Estate of Darnell Daniels, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 18-L-71 |
| VENTA CORPORATION, f/k/a American Bare Conductor, Inc.; SYCAMORE INDUSTRIAL PARK ASSOCIATES; and ROBERT BOEY, | ) ) ) ) ) ) | Honorable |
| Defendants-Appellees. | ) ) | Bradley J. Waller, Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justices Bridges and Justice Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1    In 1996, Darnell Daniels was directed to remove debris by his employer, the defendant American Bare Conductor, Inc. (ABC), now known as Venta Corporation (Venta). The debris was near the facility that ABC leased from the defendant Sycamore Industrial Park Associates (SIPA). At that time, the defendant Robert Boey was a general partner of both ABC and SIPA. None of the defendants informed Daniels that the debris he was directed to remove contained asbestos. In 2017, after developing terminal mesothelioma, Daniels filed a complaint against all the defendants, sounding in negligence and intentional tort. The circuit court of De Kalb County subsequently

dismissed Daniels's sixth amended complaint with prejudice. The plaintiff, Anna Daniels, who is Daniels's widow and the administrator of his estate, thereafter appealed. For the following reasons, we reverse the circuit court's decision and remand for additional proceedings.

¶ 2                                    I. BACKGROUND

¶ 3     The following facts are drawn from undisputed facts in the record and the allegations of the sixth amended complaint. Because this is an appeal from the dismissal of that complaint, we take the facts alleged therein as true. *Kai v. Board of Directors of Spring Hill Building 1 Condominium Ass'n*, 2020 IL App (2d) 190642, ¶ 3.

¶ 4     Boey and now-deceased Michael Krieger were partners in SIPA.  SIPA owned Sycamore Industrial Park. In 1985, Boey and Krieger formed ABC, a company that manufactured wire. ABC leased a portion of the industrial park from SIPA for its production facilities.

¶ 5     In August 1996, SIPA engaged ABC as an independent contractor to remove asbestos-containing materials and scrap from a building known as the Quonset hut. SIPA told ABC to remove the asbestos-containing material from the Quonset hut with as little expense as possible. The Quonset hut was on SIPA's property, but not directly on the portion of the property leased by ABC. ABC was not licensed to undertake removal of scrap containing asbestos. ABC directed its operations manager, John Jacky, to carry out and supervise the asbestos abatement project.

¶ 6     ABC subsequently worked with Manpower Group US, Inc. (Manpower), a company that provided services on a temporary basis. Daniels was employed by Manpower. From August 12, 1996, to October 14, 1996, ABC employed Daniels to work under its direction at the premises that ABC leased at the industrial park. In late August 1996, approximately one week after Daniels began his employment with ABC, Jacky directed Daniels to dispose of material that, unbeknownst to Daniels, contained asbestos. The material was in the Quonset hut. Neither Jacky nor ABC

informed Daniels that he was being asked to perform work outside the premises leased by ABC. Neither Jacky nor ABC provided Daniels with protective equipment to remove the asbestos-containing material.

¶ 7    Daniels worked on clearing out the materials in the Quonset hut for two weeks. After working on the project for a week to a week and a half, an ABC wire inspector told him that the material that he was removing contained asbestos and provided him with a paper mask, which he used to complete the work. After Daniels finished his temporary assignment in October 1996, he accepted full-time employment with ABC and worked for ABC until 2003.

¶ 8    In 2006, Boey and Krieger sold their shares in ABC to its current owner, which changed the company's name to Venta Corporation. After Krieger died in 2014, Boey became the sole owner of SIPA.

¶ 9    On February 16, 2017, Daniels was diagnosed with peritoneal mesothelioma. He thereafter filed a seven-count complaint against the defendants, alleging that the defendants exposed him to asbestos and caused him to develop mesothelioma. Counts I and II sounded in premises liability against SIPA. Counts III and IV sounded in secondary premises liability against Boey. Counts V, VI, and VII were all directed against Venta. Count V alleged negligence, count VI alleged willful and wanton misconduct, and count VII alleged intentional tort. After allowing Daniels to amend the complaint numerous times, on April 8, 2021, the circuit court dismissed Daniels's sixth amended complaint with prejudice. The circuit court dismissed the counts against SIPA, finding that it did not owe Daniels a duty of reasonable care. The circuit court also dismissed the counts against Boey, as Daniels acknowledged that his arguments against Boey were based on SIPA being found liable. The circuit court dismissed counts V and VI against Venta, finding that those claims were barred by the exclusive remedy provisions of the Workers' Compensation Act (820 ILCS

305/1(d) (West 2016)). The circuit court dismissed count VII, finding that Daniels had not sufficiently alleged an intentional tort.

¶ 10    On March 27, 2021, Daniels died of mesothelioma. On May 5, 2021, the circuit court appointed the plaintiff as special administrator, to pursue an appeal. On May 6, 2021, she filed a timely notice of appeal.

¶ 11                                II. ANALYSIS

¶ 12    On appeal, the plaintiff argues that the circuit court erred in dismissing with prejudice her (1) negligence and willful and wanton misconduct claims against Venta, (2) intentional tort claim against Venta, and (3)  premises liability claims against SIPA.

¶ 13    SIPA filed a motion to dismiss the plaintiff's action, pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2018)), while Venta filed a motion to dismiss pursuant to both sections 2-615 and 2-619 of the Code (*id.* § 2-619). A motion to dismiss under section 2-615 challenges the legal sufficiency of the plaintiff's claim, while a motion to dismiss under section 2-619 admits the legal sufficiency of the claim but asserts defenses or defects outside the pleading to defeat the claim. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 578-79, (2006).

¶ 14    In this case, the circuit court granted the defendants' motions to dismiss under both section 2-615 and section 2-619. A section 2-615 or section 2-619 motion to dismiss admits as true all well-pleaded facts and all reasonable inferences from those facts. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. When ruling on a motion to dismiss under either section 2-615 or section 2-619, a court must construe the pleadings and supporting documents in the light most favorable to the nonmoving party. *In re Parentage of M.J.*, 203 Ill. 2d 526, 533 (2003). Our review of a dismissal under either section is *de novo*. *Solaia Technology*, 221 Ill. 2d at 579.

¶ 15    We first address the plaintiff's contention that the circuit court erred in dismissing her claims against Venta for negligence and willful and wanton misconduct. The circuit court found that these claims were barred by the Worker's Compensation Act. The plaintiff insists, however, that her claims do not fall within the exclusive remedy provisions of the Workers' Compensation Act.

¶ 16    We note that, although the circuit court dismissed counts V and VI of the plaintiff's complaint pursuant to the Workers' Compensation Act, the Workers' Occupational Diseases Act (820 ILCS 310/1(d) (West 2016)) is more applicable to the case at bar. The Workers' Occupational Diseases Act provides compensation for diseases arising out of, and in the course of, employment. *Id.* Nonetheless, our analysis of both acts would be the same.

¶ 17    The Workers' Occupational Diseases Act is modeled after and designed to complement the Workers' Compensation Act, which provides financial protection for accidental injuries arising out of, and in the course of, employment. See 820 ILCS 305/1(d) (West 2012). In enacting these statutes, the General Assembly established a new framework for recovery, to replace the common-law rights and liabilities that previously governed employee injuries. *Sharp v. Gallagher*, 95 Ill. 2d 322, 326 (1983); *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 44 (1994) ("[t]he Workers' Compensation Act reflects the legislative balancing of rights, remedies, and procedures that govern the disposition of employees' work-related injuries"); *Duley v. Caterpillar Tractor Co.*, 44 Ill. 2d 15, 18 (1969) (" 'The [Workers' Compensation Act] was designed as a substitute for previous rights of action of employees against employers and to cover the whole ground of the liabilities of the master, and it has been so regarded by all courts.' " (quoting *Matthiessen & Hegeler Zinc Co. v. Industrial Board of Illinois*, 284 Ill. 378, 382-83 (1918))).

¶ 18    In exchange for a system of no-fault liability upon the employer, the employee is subject to statutory limitations on recovery for injuries and occupational diseases arising out of and in the course of employment. The acts further provide that the statutory remedies " 'shall serve as the employee's exclusive remedy if he sustains a compensable injury.' " *Sharp*, 95 Ill. 2d at 326-27 (quoting *McCormick v. Caterpillar Tractor Co.*, 85 Ill. 2d 352, 356 (1981)). Accordingly, both acts contain an exclusive remedy provision as part of the *quid pro quo*, which balances the sacrifices and gains of employees and employers. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 462 (1990).

¶ 19    The exclusive remedy provisions are embodied in two separate sections of the acts. Section 5(a) of the Workers' Occupational Diseases Act provides, in pertinent part, as follows:

> "§ 5. (a) There is no common law or statutory right to recover compensation or damages from the employer *** for or on account of any injury to health, disease, or death therefrom, other than for the compensation herein provided ***." 820 ILCS 310/5(a) (West 2016).

¶ 20    Similarly, section 11 of the same act provides:

> "§ 11. The compensation herein provided for shall be the full, complete and only measure of the liability of the employer bound by election under this Act and such employer's liability for compensation and medical benefits under this Act shall be exclusive and in place of any and all other civil liability whatsoever, at common law or otherwise, to any employee or his legal representative on account of damage, disability or death caused or contributed to by any disease contracted or sustained in the course of the employment." *Id.* § 11.

¶ 21    The corresponding exclusive remedy provisions in sections 5 and 11 of the Workers' Compensation Act (820 ILCS 305/5(a), 11 (West 2016)) have been viewed analogously for purposes of judicial construction. *Folta v. Ferro Engineering*, 2015 IL 118070, ¶ 13. Thus, cases that have construed the exclusive remedy provisions in the context of the Workers' Compensation Act also apply in the context of the Workers' Occupational Diseases Act. *Id.*

¶ 22    In discussing the scope of the exclusive remedy provisions under the Workers' Compensation Act, our supreme court has indicated that the statute generally provides the exclusive means by which an employee can recover against an employer for a work-related injury. *Meerbrey*, 139 Ill. 2d at 462. However, an employee can escape the exclusive remedy provisions of the Workers' Compensation Act if the employee establishes that the injury (1) was not accidental, (2) did not arise from his employment, (3) was not received during the course of employment, or (4) was not compensable under the Workers' Compensation Act. *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 237 (1980).

¶ 23    The Workers' Compensation Act further recognizes the concept of borrowing and loaning employers. 820 ILCS 305/1(a)(4) (West 2012). The exclusive remedy provision extends immunity to borrowing and loaning employers as well. 820 ILCS 305/5(a) (West 2018). To determine whether a borrowed-employee relationship existed, the inquiry is twofold: (1) whether the special employer had the right to direct and control the way the special employee performed the work and (2) whether there existed a contract of hire between the special employee and the special employer, either express or implied. *A.J. Johnson Paving Co. v. Industrial Comm'n*, 82 Ill. 2d 341, 348 (1980). Whether a borrowed-employee relationship existed is generally a question of fact, but if the facts are undisputed and permit but a single inference, the question is one of law. *Folta*, 2015 IL 118070, ¶ 14.

¶ 24    Under both the tests for whether an employee can escape the exclusive remedy provisions of the Act and whether a borrowed-employee relationship exists, it is imperative that a valid contract between the parties exists. *A.J. Johnson Paving*, 82 Ill. 2d at 348; *Klug v. Industrial Comm'n*, 381 Ill. 608, 611 (1943) ("In order for an accident to arise out of the employment it must be incidental to the performance of the contract of service, and the origin or cause of the accident must belong to and be connected with the contract of service."). Here, however, there was no enforceable contract.

¶ 25    A contract that requires someone to do something illegal is equivalent to there being no contract at all. *In re Marriage of Newton*, 2011 IL App (1st) 090683, ¶ 39 (if the subject matter of a contract is illegal, that contract is void *ab initio* and treated as if it never existed); see also *Frydman v. Horn Eye Center, Ltd.*, 286 Ill. App. 3d 853, 859 (1997) ("[I]t is well settled in Illinois that if a contractual agreement expressly contravenes a law or public policy of the State, that contract will be deemed illegal and unenforceable." (Internal quotation marks omitted.)). When ABC directed Daniels to remove the asbestos, that directive violated the Commercial and Public Building Asbestos Abatement Act because ABC was not licensed to do that work. See 225 ILCS 207/5 (West 1996). As such, the subject matter of ABC and Daniels's alleged contract was illegal and therefore unenforceable. See *Ransburg v. Haase*, 224 Ill. App. 3d 681, 684-85 (1992) ("courts will not enforce a contract involving a party who does not have a license called for by legislation that expressly prohibits the carrying on of the particular activity without a license where the legislation was enacted for the protection of the public"). Whether or not Daniels ultimately consented to removing the asbestos is irrelevant because one cannot contractually consent to performing an illegal act. See *Marriage of Newton*, 2011 IL App (1st) 090683, ¶ 39 (a party cannot choose to ratify an illegal contract).

¶ 26 As no valid contract existed between Daniels and ABC, the exclusive remedy provisions of the Workers' Compensation Act did not prevent Daniels from bringing an action against ABC. *A.J. Johnson Paving*, 82 Ill. 2d at 348; *Klug*, 381 Ill. at 611. The circuit court therefore erred in dismissing counts V and VI of the plaintiff's complaint based on the exclusive remedy provisions of the Workers' Compensation Act.

¶ 27 We next address the plaintiff's contention that the circuit court erred in dismissing her claim that ABC committed an intentional tort against Daniels. To survive the exclusive remedy provisions of the Act, a plaintiff who brings an intentional tort claim must allege that the defendant acted deliberately with the specific intent to injure. *Hartline v. Celotex Corp.*, 272 Ill. App. 3d 952, 955 (1995). An allegation that the defendant was "substantially certain," or knew with a "strong probability," that injury would result from its actions is not sufficient to escape the strictures of the Workers' Compensation Act. *Id.*

¶ 28 Here, the plaintiff alleged that the officers of ABC—Boey and Krieger—had acquired sufficient knowledge and information concerning asbestos and the hazards thereof that, by and well before August 1996, they knew that persons inhaling asbestos would be medically compromised and suffer immediate bodily injury and harm. Having this knowledge, ABC then deliberately and with specific intent to cause Daniels bodily injury directed him to remove scrap materials from the Quonset hut while intentionally concealing from him that said materials contained asbestos. ABC did not tell Daniels that such work was illegal, hazardous, and injurious. ABC intentionally determined not to provide him with the information, instruction, and equipment needed to reduce or eliminate his exposure to and inhalation of asbestos. ABC specifically intended that Daniels, an uninformed temporary worker, would be medically compromised as a

consequence of unprotected exposure to asbestos, because protecting or informing him would have jeopardized ABC's plan to perform the project as cheaply as possible.

¶ 29    The premise of the plaintiff's allegations is that ABC knew that Daniels would be injured if he performed the asbestos removal, yet ABC instructed him to do it anyway. These allegations demonstrate that ABC specifically intended to harm Daniels. The circuit court therefore erred in dismissing count VII of the plaintiff's complaint, which alleged that ABC committed an intentional tort against Daniels.

¶ 30    In so ruling, we note that ABC repeatedly argues that the plaintiff had to allege that ABC specifically intended that Daniels suffer a fatal injury from the asbestos removal. That is simply not true. See *People v. Dorn*, 378 Ill. App. 3d 693, 698-99 (2008) (actor need not intend nor contemplate exact harm actually suffered to commit intentional tort); see also *Miller v. Hecox*, 2012 IL App (2d) 110546, ¶ 44 (specific intent entails having contemplated the wrongfulness of one's conduct and that it will cause harm to others).

¶ 31    We also are unpersuaded by Venta's reliance on *Copass v. Illinois Power Co.*, 211 Ill. App. 3d 205 (1991), and *Wells v. IFR Engineering Co.*, 247 Ill. App. 3d 43 (1993). In both of these cases, the reviewing courts held that the plaintiffs' allegations of the employers' substantial certainty or knowledge of the strong probability that their directives would cause the employees harm did not set forth a cause of action for intentional tort. *Copass*, 211 Ill. App. 3d at 213; *Wells*, 247 Ill. App. 3d at 45-46. However, the plaintiff alleged more than that here. Taking the plaintiff's allegations in the light most favorable to her, we determine that the plaintiff alleged that ABC directed Daniels to remove asbestos knowing with 100% certainty that such an act would injure him.

¶ 32   We further reject Venta's argument that the plaintiff's allegations are too conclusory to survive a motion to dismiss. Specifically, Venta claims that the plaintiff did not allege any specific facts "about who possessed information about the serious hazards of asbestos exposure, what information those individuals possessed when," and "who concluded that *** Daniels definitively would be medically compromised, inevitably, if exposed to asbestos." The plaintiff responds that she did not need to set forth every pertinent fact at the pleadings stage of the case. We agree. See *Avery v. GRI Fox Run, LLC*, 2020 IL App (2d) 190382, ¶ 27 (a complaint will be deemed sufficient if the allegations contained therein " 'reasonably inform the defendants by factually setting forth the elements necessary to state a cause of action' " (quoting *People ex rel. Scott v. College Hills Corp.*, 91 Ill. 2d 138, 145 (1982))). Here, the plaintiff identified three decisionmakers at ABC (Boey, Krieger, and Jacky) who were aware of the asbestos in the Quonset hut and the dangers of having it removed. Further, although Venta asserts that the plaintiff improperly concludes that ABC intended Daniels to be medically compromised, an illicit intent to injure is rarely amenable to direct proof and therefore must be inferred from the circumstances as a whole, including the defendant's acts and knowledge. See *Cincinnati Insurance Co. v. Guccione*, 308 Ill. App. 3d 220, 226 (1999). Based on the circumstances here, the plaintiff alleged enough to survive a motion to dismiss at the pleadings stage.

¶ 33   We next turn to the plaintiff's argument that the trial court improperly dismissed her claims against SIPA after finding that SIPA did not owe Daniels a duty of reasonable care. The plaintiff asserts that SIPA owed Daniels a duty under (1) general Illinois duty law, (2) section 343 of the Restatement (2d) of Torts (Restatement (Second) of Torts § 343 (1965)), and (3) section 414 of the Restatement (2d) of Torts (Restatement (Second) of Torts § 414 (1965)).

¶ 34    Unless a duty is owed, there is no negligence. *American National Bank & Trust Co. of Chicago v. National Advertising Co.*, 149 Ill. 2d 14, 26 (1992). Whether a duty exists is a question of law. *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140 (1990). Whether a duty exists is also an inquiry shaped by public policy, since we must decide whether the defendant and the plaintiff stand in such a relationship to one another that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff. *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 388-89 (1998). Accordingly, we consider not only the (1) reasonable foreseeability and (2) likelihood of injury, but also (3) the magnitude of the burden on the defendant in guarding against injury and (4) the consequences of placing that burden on the defendant. *Ward*, 136 Ill. 2d at 140-41.

¶ 35    SIPA insists that it did not have such a relationship with Daniels because it did not invite him on to its property, ABC did. However, the fact that SIPA did not personally invite Daniels on to its property is not dispositive of whether it had a relationship with him. Section 332 of the Restatement (Second) of Torts explains:

> "(1) An invitee is either a public invitee or a business visitor.
>
> (2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
>
> (3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."
> Restatement (Second) of Torts § 332 (1965)

¶ 36    In her allegations, the plaintiff alleges that SIPA informed ABC that it wanted the asbestos removed from its property. ABC subsequently hired Daniels to perform that task. Thus, Daniels was invited on to SIPA's land as a business visitor for a reason directly connected to SIPA's business dealings. See *id.*; see also *Reynolds v. American Oil Co.*, 32 Ill. App. 3d 905, 911 (1975)

(explaining that principle of tort law set forth in Restatement (Second) of Torts § 332 (1965) has wide recognition). Accordingly, the plaintiff's allegations demonstrate a relationship between SIPA and Daniels.

¶ 37 As the plaintiff alleged that Daniels's injury occurred based on a condition on SIPA's property while Daniels was on the property as an invitee, we decide the foreseeability prong of the duty test by reference to section 343 of the Restatement (Second) of Torts. *LaFever*, 185 Ill. 2d at 389. Section 343 states in relevant part:

> "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger."
> Restatement (Second) of Torts § 343 (1965).

¶ 38 The plaintiff argues that another significant consideration in determining whether SIPA owed Daniels a duty of reasonable care is that SIPA and ABC were related entities who were closely held by two individuals. See *Chicago Economic Fuel Gas Co. v. Myers*, 168 Ill. 139, 144-45 (1897); *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 291 (2007). In *Chicago Economic Fuel*, a contractor's employee was injured when engaged in installation of natural gas pipelines under Chicago streets. 168 Ill. at 142. The court held the principal gas company liable on several grounds. First, the contractor's foreman negligently supervised the worker. *Id.* at 140. Second, the gas company was independently negligent for prematurely running the natural gas through the pipes.

*Id.* at 144. Third, the court determined that the gas company and the construction company were related entities, as they both had the same partners. *Id.* at 144-45. As the gas company had retained control over the construction project, it could not shift its liabilities to the construction company, which was its "mere instrument or tool." *Id.* at 144.

¶ 39   In *Forsythe*, an employee of the defendant-parent company's subsidiary was killed in a work-related accident. 224 Ill. 2d at 277. His family brought a wrongful death action against the defendant, alleging that it had unreasonably restricted the subsidiary's budget for worker health and safety. *Id.* at 281. Looking to the prescribed factors for determining duty, the supreme court held that a duty existed based upon the defendant's participation in causing the injury to a related entity's employee. The supreme court explained that "[i]t is conceivable that severe cutbacks in staffing, safety, maintenance, and training in such industries could lead, with reasonable foreseeability, to the injury of others." *Id.* at 291.

¶ 40   In her complaint, the plaintiff alleged that, SIPA, by and through its partners Boey and Krieger, restricted the means and methods to be used by ABC in removing asbestos materials from the Quonset hut by requiring that project to be performed with as little expense as possible and without complying with any laws or regulations. Specifically, SIPA directed ABC to (1) not subcontract the project to a licensed asbestos-abatement contractor, (2) not obtain permits for the project, (3) hire someone who was unfamiliar with the composition of the materials being removed and unaware of the hazards of asbestos, and (4) not use any precautions to minimize asbestos contamination.

¶ 41   We believe that the plaintiff's complaint sufficiently alleged that SIPA owed Daniels a duty of reasonable care on the basis of premises liability. The allegations indicate that SIPA knew that there was a dangerous condition—asbestos—on its property and that the asbestos would injure

anyone who encountered it. Although ABC also had this knowledge, SIPA knew that ABC would not share this information with Daniels because SIPA and ABC were related entities and SIPA had directed ABC not to inform him. See *Chicago Economic Fuel*, 168 Ill. at 144-45. As such, it was foreseeable to SIPA that Daniels would be injured if it did not inform him of the asbestos. See *Forsythe*, 224 Ill. 2d at 291.

¶ 42 Further, public policy, as reflected in the Commercial and Public Building Asbestos Abatement Act (225 ILCS 207/5 (West 2020)), places on the landowner the burden of having asbestos properly removed. It is not the responsibility of the person hired to remove debris to determine that he is removing asbestos. As the plaintiff sufficiently set forth a cause of action based on SIPA's failure to warn Daniels of the dangers on its property, we hold that the circuit court improperly dismissed counts I and II of the plaintiff's complaint.

¶ 43 In so ruling, we note that SIPA insists that the plaintiff improperly relies on *Chicago Economic Fuel* and *Forsythe* to suggest that "relatedness" between two entities is sufficient to impose a duty on both. SIPA misconstrues the plaintiff's argument. The plaintiff does not contend that SIPA and ABC's relatedness creates a duty but rather that relatedness is appropriate to consider in determining whether a duty should be imposed on the landowner. The plaintiff's argument is consistent with both *Chicago Economic Fuel* and *Forsythe*.

¶ 44 Based on our determination that SIPA owed Daniels a duty of care pursuant to section 343 of the Restatement, we need not address whether SIPA also owed Daniels a duty of care under section 414 of the Restatement.

¶ 45 As a final matter, we note that SIPA requests that the circuit court's dismissal of the secondary premises liability claims against Boey be affirmed because Boey is not alleged to have any direct liability for Daniels's injuries. At most, SIPA contends that Boey would be subject to

secondary liability, which is not yet ripe for consideration, because no judgment has been entered against SIPA. The plaintiff responds that Boey's position is now contrary to the parties' earlier agreement and understanding that Boey was named only for secondary liability in the event that SIPA cannot satisfy a possible judgment. The plaintiff insists that the parties have already agreed that Boey's potential liability simply follows SIPA's fortunes.

¶ 46     Based on the parties' agreement, and the fact that a secondary-liability claim against a partner may be brought in the same action as one against the partnership (805 ILCS 206/307(b) (West 2020)), we determine that the plaintiff's action against Boey is not premature. We therefore reverse the circuit court's dismissal of counts III and IV of the plaintiff's complaint sounding in secondary premises liability against Boey.

¶ 47                              III. CONCLUSION

¶ 48     For the foregoing reasons, the judgment of the circuit court of De Kalb County is reversed and remanded for additional proceedings.

¶ 49     Reversed and remanded.

---

**No. 2-21-0244**

---

| | |
|---|---|
| **Cite as:** | *Daniels v. Venta Corp.*, 2022 IL App (2d) 210244 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of De Kalb County, No. 18-L-71; the Hon. Bradley J. Waller, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | William A. Kohlburn (*pro hac vice*) and Ryan J. Kiwala, of Simmons Hanly Conroy LLC, of Alton, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Margaret O. Byrne, John J. O'Sullivan, Catherine Basque Weiler, and Andrew A. Lothson, of Swanson Martin & Bell, LLP, of Chicago, for appellee Venta Corporation. |
| | James R. Branit, Kevin A. Titus, and Joseph P. Sullivan, of Litchfield Cavo LLP, of Chicago, for other appellees. |

---