DANIELLE N. BERCAW, as Special Adm'r of the Estate of Jason W. Bercaw, Deceased, *et al.*, Plaintiffs-Appellants, v. DOMINO'S PIZZA, INC., Defendant (James E. Shipman *et al.*, Defendants-Appellees).

Second District    No. 2—93—0175

Opinion filed February 28, 1994.

Julie A. Coleman, of Bochte & Kuzniar, of St. Charles, and Kelso & Crewell, of Champaign (Thomas R. Kelso, of counsel), for appellants.

John E. Norton, of O'Reilly, Cunningham, Norton & Mancini, of Wheaton (Denis K. Sheehan, of counsel), for appellees.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

This case presents an issue of first impression in the second district: whether the exclusive remedy provision of the Workers' Compensation Act (the Act) (820 ILCS 305/5(a) (West 1992)) bars a suit against a pizza delivery business brought by relatives of a deliveryman killed by assailants during the course of a delivery, when the relatives allege that the business knew with substantial certainty that the deliveryman would be attacked. We hold that the exclusive remedy provision does bar this suit.

The plaintiffs are the survivors, or next of kin, and the special administrator of the estate of Jason Bercaw (Bercaw). The defendants are Domino's Pizza, Inc. (Domino's), and James E. Shipman; Peteza, Inc.; and Precision Pizza, Inc. (collectively referred to as Shipman). Plaintiffs sued Domino's and Shipman after Bercaw was killed while delivering pizza. Count I of plaintiffs' complaint alleged wrongful death and negligence against Domino's. That count was stayed pending this appeal. Count II alleged against Shipman a tort the plaintiffs have labelled "intentional endangerment to wrongful death." The circuit court of Kane County dismissed count II with prejudice pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1992)) on the ground that the claim was barred by the Act's exclusive remedy provision. Plaintiffs appeal.

In this court, plaintiffs argue that: (1) the exclusive remedy provision does not bar the suit; (2) the trial court erroneously distinguished cases in which employees successfully stated claims against their employers for injuries caused by airborne asbestos and toxins in the workplace; (3) the trial court erred in deciding that an intervening cause precluded the suit; and (4) the trial court's failure to rule on Shipman's election of remedies argument "renders the issue moot" on appeal.

We detail the allegations of count II. Shipman operated a Domino's Pizza franchise in Aurora, Illinois. Shipman, as a Domino's

franchisee, was required to follow Domino's safety procedures. Shipman knew or should have known that pizza delivery personnel were increasingly becoming the victims of robbery and murder. Bercaw, age 20, worked for Shipman as a deliveryman. Domino's made available to Shipman training and written materials covering procedures for keeping delivery personnel safe on their deliveries. Shipman knew or should have known that untrained delivery personnel risked life and limb during deliveries. Despite such knowledge, Shipman intentionally failed to require its employees to follow the prescribed safety precautions and intentionally allowed its management to subject pizza delivery personnel to dangerous delivery practices.

Shipman intentionally endangered Bercaw's life by: (1) failing to train Bercaw in the prescribed safety regulations; (2) failing to warn Bercaw of the dangers inherent in pizza delivery; (3) allowing his employees to accept a delivery order from a "Mr. Jones" calling from a known pay phone in Aurora; (4) allowing management to require Bercaw to deliver that order to a darkened residence adjacent to a darkened lot; (5) failing to refuse delivery orders from known pay phones; (6) failing to refuse delivery in areas that were likely locations for crime; and (7) failing to require two-person delivery teams when orders came from known pay phones. As a result of Shipman's intentional acts, Bercaw was strangled by third persons while attempting to deliver an order to the darkened house in Aurora.

On appeal from a dismissal with prejudice under section 2—619, all well-pleaded facts in the complaint are taken as true. (*Elliott v. LRSL Enterprises, Inc.* (1992), 226 Ill. App. 3d 724, 727.) Our job is to view the complaint in the light most favorable to plaintiffs and to determine if the complaint alleges any set of facts upon which relief may be granted. (*Incandela v. Giannini* (1993), 250 Ill. App. 3d 23, 26.) We look at the complaint *de novo*, in light of all the pertinent factual and legal circumstances. *Mitchell v. Skubiak* (1993), 248 Ill. App. 3d 1000, 1004.

■ The exclusive remedy provision of the Act provides, in pertinent part:

> "No common law or statutory right to recover damages from the employer *** for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury." (820 ILCS 305/5(a) (West 1992).)

This section prohibits an employee from bringing a common-law cause of action against his employer to recover for injuries suffered by the employee. However, exceptions exist which allow a common-law suit when the employee can prove that the injury (1) was not accidental, (2) did not arise from his employment, (3) was not suffered in the course of his employment, or (4) is not compensable under the Act. *Meerbrey v. Marshall Field & Co.* (1990), 139 Ill. 2d 455, 463.

At issue in this case is whether Bercaw's death was "not accidental" within the meaning of the above test. Plaintiffs argue that Bercaw's death was "not accidental" in that Shipman knew with substantial certainty that sending the untrained Bercaw out to deliver an order placed on a pay phone would result in an assault on Bercaw. Shipman claims that Bercaw's death was accidental because Shipman did not specifically intend to injure Bercaw. Thus, the underlying issue is whether "not accidental" requires that the employer know with substantial certainty that its actions will injure the employee or that the employer specifically intend that its actions injure the employee.

Plaintiffs cite *Rockford Redi-Mix, Inc. v. Teamsters Local 325* (1990), 195 Ill. App. 3d 294, 306-07, in which this court held that workers who had let cement sit idle in their employer's cement trucks, knowing that the cement would harden and damage the trucks, committed an intentional tort against their employer. There, we relied on section 8A of the Restatement (Second) of Torts in defining intentional conduct. The comment to section 8A provides:

> "All consequences which the actor desires to bring about are intended, as the word is used in this Restatement. Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result." (Restatement (Second) of Torts § 8A, Comment *b*, at 15 (1965).)

Plaintiffs argue that the above definition should apply in this case also.

*Copass v. Illinois Power Co.* (1991), 211 Ill. App. 3d 205, is on point. A suit was brought in that case by a widow whose husband had been killed while working on a gas pipeline for his employer, Illinois Power Company. The husband had joined two sections of a 12-inch gas pipeline with a mechanical sleeve and was testing the joints for leaks when an explosion occurred, killing him. The widow alleged that the power company committed an intentional tort against her husband when it allowed him to use a defective sleeve without proper training and without being warned of the danger

associated with the specific work to be performed. The widow alleged that the power company knew with substantial certainty that its actions would result in injury to her husband. *Copass,* 211 Ill. App. 3d at 208.

The *Copass* court rejected the widow's argument that the Restatement's "substantial certainty" test should control, reasoning that it was more consistent with the purposes of the Act to require her to show a specific intent to injure on the part of the employer. (*Copass,* 211 Ill. App. 3d at 212-13.) We agree.

The court in *Copass* correctly noted that the Act seeks to balance the interests of employers and employees with regard to on-the-job injuries:

> "Under workers' compensation, employees may recover for injuries without proving the employer was at fault, and they are to be provided swift and certain recovery. In exchange, workers' compensation becomes the exclusive remedy because employees give up the right to pursue a potentially larger judgment in a common law action." (*Copass,* 211 Ill. App. 3d at 213, *citing* 2A A. Larson, Law of Workmen's Compensation § 65.11, at 12—1 through 12—9 (1990).)

(See also *Jablonski v. Multack* (1978), 63 Ill. App. 3d 908, 910; *Meerbrey,* 139 Ill. 2d at 462.) We believe, like the *Copass* court, that use of the substantial certainty standard would be unduly difficult to employ in distinguishing between accidental and nonaccidental injuries and that adoption of the substantial certainty test would upset the Act's balance of interests. *Copass,* 211 Ill. App. 3d at 213.

Specifically, use of the substantial certainty test could well lead to a proliferation of suits against employers whose employees' jobs entail a high risk of injury. It would be open to argument and speculation at what point an employer's knowledge that a certain task presented a risk of employee injury became knowledge on the part of the employer that injury was substantially certain to occur. (See *Copass,* 211 Ill. App. 3d at 213, citing *Beauchamp v. Dow Chemical Co.* (1986), 427 Mich. 1, 24-25, 398 N.W.2d 882, 893 (articulating "substantial certainty" test but superseded by amendment to Michigan Workers' Disability Compensation Act's exclusive remedy provision (Mich. Comp. Laws § 418.131 (19___); Mich. Stat. Ann. § 17.237(131) (Callaghan 19___)) adopting "specific intent to injure" test).) The "specific intent to injure" standard is more of a bright-line test which should not encourage Act-related civil litigation, thus advancing one of the Act's purposes: that of providing a broad scheme of recompense for on-the-job injuries. *Bloemer v. Square D Co.* (1972), 8 Ill. App. 3d 371, 373.

Our conclusion is buttressed by cases discussing recovery against the employer when an employee is intentionally injured by a co-employee in the course of their employment. The exclusive remedy provision bars a suit against the employer based on an injury intentionally inflicted by a co-employee unless the employer commanded or expressly authorized the assault by the co-employee, or unless the co-employee can be characterized as the employer's alter ego, so that the employer itself could be said to have committed the assault. (See *Jablonski v. Multack* (1978), 63 Ill. App. 3d 908, 910-14; *Collier v. Wagner Castings Co.* (1980), 81 Ill. 2d 229, 238-39.) Notably, the standard in these cases is much closer to the "specific intent to injure" test than to the "substantial certainty" test. If an employer may not be sued for injuries incurred due to an assault by a co-employee absent the employer's figuratively committing, expressly authorizing or commanding the assault, we fail to see why an employer's protection should be lessened when the intentional acts of nonemployee third parties are at issue.

Finally, consideration of the so-called "toxins and asbestos" cases does not change our decision. Plaintiffs claim that *Martin v. Granite City Steel Division of National Steel Corp.* (S.D. Ill. 1985), 607 F. Supp. 1430, *Handley v. UNARCO Industries, Inc.* (1984), 124 Ill. App. 3d 56, and *In re Johns-Mansville/Asbestosis Cases* (N.D. Ill. 1981), 511 F. Supp. 1229, lead to the conclusion that plaintiffs have sufficiently pleaded a valid cause of action against Shipman. These cases are distinguishable.

In *Martin*, former employees of a steel company alleged that the company harmed them by "intentionally, knowingly, and willfully" exposing them to toxins and carcinogens through its practice of recycling coal by-products into its coke ovens. (*Martin*, 607 F. Supp. at 1431.) The court held that the complaint was not barred by the exclusive remedy provision of the Act or the Workers' Occupational Diseases Act (820 ILCS 310/5 (West 1992)). (*Martin*, 607 F. Supp. at 1432-33.) However, the case did not address any dichotomy in the interpretation of the phrase "not accidental" as it is used in the test for escaping the operation of the exclusive remedy provision. Neither did the case outline the former employees' allegations in any detail. Instead, it relied primarily on *Handley* and *Johns Mansville*.

In *Handley*, the court construed the exclusive remedy provision of the Workers' Occupational Diseases Act (820 ILCS 310/5 (West 1992)). Our supreme court has said that the Workers' Occupational Diseases Act is analogous to the Act (see *Dur-Ite Co. v. Industrial Comm'n* (1946), 394 Ill. 338, 344). *Handley* concerned a suit alleging that an employer intended to kill certain employees "in that it knew

that exposing plaintiffs and his [*sic*] coworkers [*sic*] to huge amounts of asbestos caused a strong probability of death." (*Handley*, 124 Ill. App. 3d at 68.) The plaintiffs also alleged that the employer fraudulently concealed the dangers of working with asbestos and that the employer "intended bodily harm to plaintiffs" through its "conscious purpose" that asbestos become trapped in its employee's bodies. (*Handley*, 124 Ill. App. 3d at 68.) The court held that the claims were not barred by the exclusive remedy provision of the Workers' Occupational Diseases Act. *Handley*, 124 Ill. App. 3d at 68-70.

Here, however, plaintiffs have not alleged a specific intent by Shipman to harm Bercaw, and we believe they could not credibly do so on the facts alleged. While an employer that requires employees to work day after day in an asbestos-contaminated workplace easily could be said to have intended to harm its employees, the same conclusion does not follow from an employer's sending a pizza deliveryman out to deliver an order made from a pay phone. In the former case, the employer conceals from its employees a certain injury of which it is aware and, incidentally, which it created; in the latter case, the employer conceals from its employee a risk of injury. Therein lies the crucial difference that makes *Handley* and *Martin* unavailing to plaintiffs here. Had Shipman known that criminals were lying in wait to assault Bercaw and nonetheless sent Bercaw to make the delivery, plaintiffs could credibly allege a specific intent to harm Bercaw.

For the same reason, *Johns-Mansville* does not aid plaintiffs. There, it was alleged that the employer had a uniform and intentional policy that its employees labor in an asbestos-contaminated workplace. (*Johns-Mansville*, 511 F. Supp. at 1231, 1234.) As in *Martin*, the details of the plaintiffs' allegations are not supplied for the reader. However, as in *Handley*, the alleged actions of the employer are such that it can reasonably and credibly be pleaded that the employer's actions were so extreme as to cross the line into the area of specific intent to harm its employees.

■ In sum, no Illinois case other than *Copass* has squarely tackled the issue of what standard should control when deciding whether an on-the-job injury was "not accidental" and thus may be the subject of a common law suit against the employer. (See *Wells v. IFR Engineering Co.* (1993), 247 Ill. App. 3d 43 (court specifically refused to consider whether to depart from *Copass* standard and apply less stringent standard for pleading intentional tort).) We do note that the United States Court of Appeals for the Seventh Circuit has remarked that Illinois courts "apply a stricter standard" than an employer's knowl-

218

edge that employee injury was substantially likely to occur from an employer's actions in order to escape the Act's exclusive remedy bar. (*Russell v. PPG Industries, Inc.* (7th Cir. 1992), 953 F.2d 326, 333.) We agree with *Copass* that the "specific intent to injure" test is in keeping with the basic purposes of the Act, and that its adoption in this district will avoid prolific litigation.

Accordingly, we affirm the judgment of the circuit court of Kane County dismissing plaintiffs' complaint with prejudice, and we find it unnecessary to address plaintiffs' other contentions.

Affirmed.

GEIGER and BOWMAN, JJ., concur.