2026 IL App (3d) 250071

Opinion filed March 5, 2026

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| LAURIE HEIDEN, as Independent Administrator of the Estate of Matthew Heiden, Deceased, | ) ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| THE VILLAGE OF WESTMONT, an Illinois Municipal Corporation; STEPHEN MAY, P.E., Individually and as the Village of Westmont Manager; INTERGOVERNMENTAL RISK MANAGEMENT AGENCY; MUELLER WATER PRODUCTS, INC., a Delaware Corporation; MUELLER CO., a Delaware Limited Liability Company; and M.E. SIMPSON COMPANY, INC., an Indiana Corporation, | ) ) ) ) ) ) ) ) ) ) ) | Appeal No. 3-25-0071 Circuit No. 23 LA 1266 |
| Defendants | ) ) | |
| (The Village of Westmont, | ) ) | |
| Defendant-Appellee). | ) | |

The Honorable Timothy J. McJoynt and Honorable Maureen R. Riordan, Judges, Presiding.

_____

JUSTICE ANDERSON delivered the judgment of the court, with opinion.
Justice Bertani concurred in the judgment and opinion.
Presiding Justice Hettel dissented, with opinion.

OPINION

¶ 1        Matthew Heiden was 20 years old and worked for the water department for the Village of Westmont (Village). The Village became aware of a leaking valve in an underground water vault. It sent Matthew into the confined space alone and without any protective equipment. The vault flooded, and Matthew drowned. The administrator of his estate (Estate) filed suit seeking damages against the Village and others. The Village sought dismissal pursuant to the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101.1 *et seq.* (West 2022)), the exclusivity provisions of the Workers' Compensation Act (Compensation Act) (820 ILCS 305/1 *et seq.* (West 2022)), and a challenge to the complaint's assertion of causation. The trial judge granted the motion to dismiss with prejudice based on the Compensation Act, and the Estate filed a timely appeal. We reverse and remand.

¶ 2                                    I. BACKGROUND

¶ 3                                    A. Matthew's Death

¶ 4        Matthew began working for the Village as a seasonal employee in June 2019. In September 2021, he became a part-time water maintenance worker, and eventually he became a full-time employee. His job responsibilities included installing and maintaining water mains, locating water main breaks, cleaning water mains of scale and foreign debris, and performing other maintenance jobs that included checking for and repairing leaks.

¶ 5        In February 2023, the Village became aware of a leaking valve in an underground water vault. The vault was an underground confined space, as defined under the general provisions of the Occupational Safety and Health Act (Safety Act) (820 ILCS 219/1 *et seq.* (West 2022)). Matthew, along with Village employees John Buschman and Frank Kulas, was dispatched to

inspect and repair the valve. Matthew—the most junior full-time employee—was the sole person directed to go into the vault where the valve was located. At the time, the Village had no work plan or confined space entry permit prepared, and it did not implement proper safety precautions commensurate with a permit-required confined space. He was sent underground without any personal protective equipment (PPE) and while the water main remained energized. While Matthew was in the vault, Kulas left the site. Buschman remained on the surface, leaving Matthew unsupervised and without a safety harness.

¶ 6    While Matthew was underground, a valve came loose or dislodged, causing Matthew's right upper extremity to become entrapped within the pipe as the vault filled with water. When Buschman became aware of a problem, he had no communication equipment. He had to flag down passing police officers so they could call for emergency responders. During that delay, water continued to fill the vault. Buschman left the scene, having to travel two blocks to shut off the water. The Westmont Fire Department arrived and tried to assess the situation, but that was hindered by Buschman's absence. The rescuers worked at least 47 minutes before Matthew was extricated from the vault. He was transported to a local trauma center, where he was pronounced dead.

¶ 7    The Department of Labor's investigation of Matthew's death found a number of oversights on the part of the Village, including (1) the absence of a confined-space work permit despite one being required, (2) the last confined-space permit on record being from 2017, (3) multiple examples of inadequate training, or no training, including about the necessity and types of required PPE and the confined-space entry procedures and permit requirements, (4) a failure to provide Matthew with a body harness or an attached retrieval line, (5) failure to flush and empty the valve

and to deenergize the water main, and (6) a failure to ensure the crew had a water key tool to turn off the water.

¶ 8                                  B. The Lawsuit, the Allegations, and the Dismissal Order

¶ 9          Following Matthew's death, his mother, Laurie Heiden, became administrator of the Estate. In November 2023, the Estate filed its initial complaint against six defendants: the Village manager individually, the Intergovernmental Risk Management Agency (IRMA), which had provided training to water department and other Village employees about procedures to be used during repairs in confined spaces, and three of the valve component manufacturing companies (Mueller Water Products, Inc., Mueller Co., and M.E. Simpson Company, Inc. (collectively, Mueller)). The trial court permitted the plaintiff to issue some written discovery, but no depositions were taken. In August 2024, the circuit court dismissed the case with leave to replead.

¶ 10         Following the dismissal of the original complaint, the Estate filed its amended complaint. The amended complaint asserts the following claims: count I—wrongful death (intent to injure) against the Village; count II—Survival Act (intent to injure) against the Village; count III— wrongful death (negligence) against IRMA; count IV—Survival Act (negligence) against IRMA; count V—wrongful death (negligence) against Mueller; and count VI—Survival Act (negligence) against Mueller. See 740 ILCS 180/1 *et seq.* (West 2022); 755 ILCS 5/27-6 (West 2022).

¶ 11         In the amended complaint, the Estate alleges the Village intentionally, regularly, and routinely violated state health and safety laws related to permit-required confined space entries and lock out/tag out procedures. Although the Village knew by September 2013 that all distribution valve vaults were permit-required confined spaces, the last permit issued by the Village for a confined space occurred in 2017. In November 2021, Illinois's Department of Labor cited the Village for failing to train employees for work in permit-required confined spaces, resulting in

4

employees being exposed to immediate and life-threatening hazards. Those hazards included chemical inhalation, respiratory breathing problems, respiratory failure, and death. The Village was again cited by the Department of Labor in January 2022 for failing to abate the various training violations of 2021. That included finding training performed by IRMA in 2021 inadequate.

¶ 12    According to the amended complaint, at the time the Village sent Matthew into the water vault, the Village intentionally failed to follow the same Safety Act regulations it had been cited for in 2021 and 2022, among others. This included failing to train Matthew and Village employees on safely performing work in a permit-required confined space, proper lock out/tag out procedures, the proper way to conduct a hazard assessment of confined space entries, and the duties and necessity of attendants during any confined-space entry work. In addition, the Village failed to provide safety equipment, including a body harness, a tripod above the confined space, a retrieval line attached to the harness and tripod, and tools to ensure proper lock out/tag out of water pressure valves.

¶ 13    The Estate further alleged that, with knowledge of these safety violations and inadequate training, the Village intentionally directed Matthew into the water vault knowing such violations would lead to the death of one of its employees. With knowledge of the potential hazards and dangers and violations of health and safety laws, the Village and its employees sent Matthew into the confined space intending "that Matthew Heiden be injured when entering a dangerous confined space on February 23, 2023, rather than spending the time, money, and effort" to provide proper training and comply with health and safety laws.

¶ 14    Once the amended complaint was filed, IRMA filed a motion to dismiss under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2022)). Basically, IRMA contended that it is a member-based risk-pooling and risk-management company set up under the

laws of Illinois for municipal corporations to utilize to save money on insurance and operational training. It claimed that it could not be held liable for whether its members followed its training.

¶ 15 The Village likewise filed a section 2-619.1 motion to dismiss. The Village argued, on section 2-619 grounds, that it could not be liable because of the exclusivity provisions of the Compensation Act and because it is immune under the Tort Immunity Act. The Village also raised an argument under section 2-615 of the Code (735 ILCS 5/2-615 (West 2022)), contending that the Estate failed to adequately allege causation.

¶ 16 The Mueller entities also filed a motion to dismiss. That motion, based on section 2-615, asserted that the amended complaint failed to adequately allege a negligent design to the valve and further contended that the Estate did not adequately allege a failure to warn of the danger associated with the valve.

¶ 17 In January 2025, the trial court heard arguments on the motions. It entered an order granting all motions to dismiss with prejudice. Relative to the claims against the Village, the order reflected that the dismissal was based on the Compensation Act's exclusivity provision. The trial court did not reach the Village's other arguments. While the Estate initially appealed from all aspects of the January 2025 dismissal order, it later sought dismissal of the appeal as to IRMA and the Mueller entities, which we granted. Only the claims against the Village remain before us.

¶ 18 II. ANALYSIS

¶ 19 A motion to dismiss pursuant to section 2-619.1 of the Code (*id.* § 2-619.1) allows parties to combine motions brought pursuant to sections 2-615 (*id.* § 2-615) and 2-619 (*id.* § 2-619) into one pleading but requires the combined motion to be divided into parts, with each part limited to the points or grounds of either section 2-615 or section 2-619.

6

¶ 20     "[A] motion to dismiss under section 2-615 differs significantly from a motion for involuntary dismissal under section 2-619." *Becker v. Zellner*, 292 Ill. App. 3d 116, 122 (1997). "[A] section 2-615 motion is based on the pleadings rather than on the underlying facts." *Cwikla v. Sheir*, 345 Ill. App. 3d 23, 29 (2003). A section 2-615 motion is solely concerned with defects on the face of the complaint. *Becker*, 292 Ill. App. 3d at 122. It admits "all well-pleaded facts and attacks the legal sufficiency of the complaint." *Randle v. AmeriCash Loans, LLC*, 403 Ill. App. 3d 529, 533 (2010).

¶ 21     In contrast, a motion brought pursuant to section 2-619 of the Code " 'admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats the claim.' " *Becker*, 292 Ill. App. 3d at 122 (quoting *Brock v. Anderson Road Ass'n*, 287 Ill. App. 3d 16, 21 (1997)). It assumes that a cause of action has been stated. *Cwikla*, 345 Ill. App. 3d at 29. A section 2-619 motion "raises defects, defenses or other affirmative matter which appears on the face of the complaint or is established by external submissions which act to defeat the plaintiff's claim." *Neppl v. Murphy*, 316 Ill. App. 3d 581, 584 (2000). "[A] section 2-619 proceeding enables the court to dismiss the complaint after considering issues of law or easily proved issues of fact." *Id.* at 585. In ruling on a section 2-619 motion, the circuit court may consider the pleadings, depositions, and affidavits. *Doe v. Montessori School of Lake Forest*, 287 Ill. App. 3d 289, 296 (1997).

¶ 22     The Village's Compensation Act and Tort Immunity Act arguments are based on section 2-619 grounds, and the causation argument is based on section 2-615 grounds. In both instances, our review is *de novo*. *Kopp v. Silver Cross Hospital & Medical Center*, 2025 IL App (3d) 240414, ¶ 16.

¶ 23          A. The Compensation Act, the Exclusive Remedy Rule, and the
                              No-Accident Exception

¶ 24          The Compensation Act provides financial protection for accidental injuries arising out of
and in the course of employment. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 462 (1990).
When the Illinois General Assembly established this framework for recovery, it replaced the
common-law rights and liabilities that previously governed many employee injuries. *Sharp v.
Gallagher*, 95 Ill. 2d 322, 326 (1983). The Compensation Act reflects the legislative balancing of
rights, remedies, and procedures that govern the disposition of employees' work-related injuries.
The Compensation Act was designed as a substitute for previous rights of action of employees
against employers and to cover the whole ground of the liabilities of the master. *Duley v.
Caterpillar Tractor Co.*, 44 Ill. 2d 15, 17 (1969).

¶ 25          In exchange for this system of no-fault liability upon the employer, the employee is subject
to statutory limitations on recovery for injuries and occupational diseases arising out of and in the
course of employment. The statutory remedies shall "serve as the employee's exclusive remedy if
he sustains a compensable injury." (Internal quotation marks omitted.) *Sharp*, 95 Ill. 2d at 326-27.
Generally, those provisions provide the exclusive means by which an employee can recover
against an employer for a work-related injury. *Meerbrey*, 139 Ill. 2d at 462.

¶ 26          However, the exclusive remedy rule, as with many rules in the law, has exceptions. An
employee can escape the exclusive remedy rule if the injury (1) was not accidental, (2) did not
arise from his employment, (3) was not received during the course of employment, or (4) was not
compensable under the Compensation Act. *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 237
(1980). The exclusivity provisions of the Compensation Act and the Workers' Occupational

8

Diseases Act (820 ILCS 310/1 *et seq.* (West 2022)) are homologous for purposes of judicial construction. *Dur-Ite Co. v. Industrial Comm'n*, 394 Ill. 338, 344 (1946).

¶ 27     At oral argument, the Estate's counsel suggested that Matthew's injury might not be compensable under the Compensation Act based on his age and unmarried status. See 820 ILCS 305/7 (West 2022). We wondered about that, too. However, this argument was not fully advanced in the trial court, so we will not consider it here.

¶ 28     The only exclusive remedy exception before us involves whether the injury was not accidental. The rationale for the rule is that an employer should not be permitted to assert that the injury was accidental and enjoy the exclusive remedy provisions of the Compensation Act when he himself committed the act causing injury. *Meerbrey*, 139 Ill. 2d at 464. For purposes of our discussion, we will refer to this as the "no-accident" exception.

¶ 29     The Village argues that the no-accident exception does not apply in this case because the Estate did not plead a sufficiently high level of culpability. Specifically, the Village argues that the no-accident exception applies only where there is a direct intent to cause harm and that the alleged conduct does not reach that level. The Village's arguments rest primarily on *Copass v. Illinois Power Co.*, 211 Ill. App. 3d 205, 214 (1991), and *Bercaw v. Domino's Pizza, Inc.*, 258 Ill. App. 3d 211, 217 (1994). Those two cases form the cornerstone of jurisprudence in Illinois regarding the mental state required to satisfy the no-accident exception. In *Copass*, the appellate court held that a "specific intent to harm" standard, rather than a "substantially certain to cause harm" standard, is more consistent with the Compensation Act's purpose of balancing the interests of an employer and an injured employee. See *Copass*, 211 Ill. App. 3d at 212-16. Relying on *Copass*, the *Bercaw* court reached a similar holding. See *Bercaw*, 258 Ill. App. 3d at 214-18. In

9

other words, under *Copass* and *Bercaw*, allegations of negligence, gross negligence, and the like are insufficient to trigger the no-accident exception.[1]

¶ 30 The Village also argues against application of the no-accident exception by citing *Kordas v. Bob's All Bright Electric, Inc.*, 2025 IL App (3d) 240482, which this Court recently decided. In *Kordas*, an employee sued his employer after a coemployee attacked him with a shovel. The trial court granted the employer's motion for summary judgment, finding that the claims were barred by the exclusivity provision of the Compensation Act. *Id.* ¶ 16. Kordas appealed, arguing that, because the employer knew the coemployee had violent propensities and because the employer disregarded the danger and failed to warn Kordas, the employer's conduct rose to the level of an intentional act. We affirmed, in a 2-1 decision, finding that Kordas failed to show a genuine issue of material fact as to the employer's knowledge that the employee had a violent history or a propensity for violence in the workplace.

¶ 31 We reject the Village's reliance on *Kordas* for two reasons. First, *Kordas* did not hold that an employer's reckless disregard for safety (*e.g.*, conduct substantially certain to cause harm) can absolutely *never* rise to the level of intentional conduct for purposes of the Compensation Act's exclusivity bar. Rather, we held that Kordas failed to submit sufficient *evidence* to support such a rise. See *id.* ¶ 32 ("Nothing in the record indicates that All Bright knew Thomas had a violent history or a propensity for violence in the workplace and that, rather than warning Kordas, the

---

[1] Some commentators disagree with *Bercaw* and *Copass*, in part because those cases reject the notion that "intent" can include not only "those consequences which are desired, but also *** those which the actor believes are substantially certain to follow from what the actor does." Prosser and Keeton on the Law of Torts § 8, at 35 (W. Page Keeton *et al.* eds., 5th ed. 1984); see Restatement (Second) of Torts § 8A, at 15 (1965). The "specific intent to cause harm" requirement has been criticized in other jurisdictions, along with *Copass* itself. See, *e.g.*, *Parret v. UNICCO Service Co.*, 2005 OK 54, ¶¶ 22-28, 127 P.3d 572. However, as we shall explain, we need not consider whether the "direct intent to cause harm" standard is more appropriate than a "substantially certain to cause harm" standard because the Estate has adequately pled the former.

company forced him to work with Thomas." (Emphases omitted.)). In other words, *Kordas* was a *proof* case decided on summary judgment; this is a *pleading* case decided on a motion to dismiss.

¶ 32　　　Second, even if *Kordas* were a pleading case, the allegations in this case are different from those in *Kordas*. The *Kordas* complaint alleged "utter indifference or conscious disregard" for the danger that existed. Here, the Estate pled the Village "knowingly sent Matthew Heiden to his death" by failing to take various safety measures, including providing necessary equipment and training, and by failing to comply with various Safety Act requirements. It further alleged that the Village "had full knowledge" of the need to comply with various labor standards and that it "intended Matthew Heiden to enter a dangerous confined space." The Estate also alleged that the Village "intended that Matthew Heiden be injured when entering a dangerous confined space" and that, despite the Village's knowledge of the danger, it "intentionally, willfully, and wantonly ignored the required confined space entry procedures" and "intentionally failed to properly train, educate, and equip" Matthew for the task it directed him to perform. Finally, the Village and its supervising employees "acted with intent that [Matthew] be injured and intentionally ignored the known and obvious hazards" and "intended to cause a harmful or offensive contact with the person of Matthew Heiden, or an imminent apprehension of such a contact."

¶ 33　　　The Village's reliance on *Copass* and *Bercaw* is likewise misplaced because those cases involved allegations far different than those pled by the Estate. See *Bercaw*, 258 Ill. App. 3d at 217 ("plaintiffs have not alleged a specific intent *** to harm Bercaw"); *Copass*, 211 Ill. App. 3d at 214 (affirming dismissal where plaintiff did not allege that "the defendant acted deliberately with specific intent to injure the employee").

¶ 34　　　Despite the Village's arguments, our decision today does not come down to whether the no-accident exception requires a "direct intent to cause harm" because the amended complaint

11

alleges *just that*. Nonetheless, the Village essentially argues that the amended complaint's use of terms such as "knowing" and "intentional" is merely a semantic attempt to circumvent the exclusivity bar. The Village argues that, in *substance*, the allegations fall into the "substantially certain to cause harm" category rather than direct intent. We disagree. The Estate's allegations, as described above, robustly detail an intent to injure, and those allegations are to be taken as true for purposes of a motion to dismiss. *Ebert v. Nassau Terrace Condominium, Inc.*, 145 Ill. App. 3d 468, 471 (1986). A plaintiff need not set forth every pertinent fact at the pleadings stage. *Daniels v. Venta Corp.*, 2022 IL App (2d) 210244, ¶ 32. Additionally, an illicit intent to injure is rarely amenable to direct proof and must be inferred from the circumstances as a whole. *Cincinnati Insurance Co. v. Guccione*, 308 Ill. App. 3d 220, 226 (1999).

¶ 35        Illinois courts have recognized situations—at the pleading stage—where allegations were sufficient to invoke the no-accident rule. For example, in *Handley v. Unarco Industries, Inc.*, 124 Ill. App. 3d 56, 68 (1984), plaintiffs alleged a wrongful death and survival action accusing their employer, Owens-Corning, of "[intent] to kill plaintiff and his coworkers in that it knew that exposing plaintiffs and his coworkers to huge amounts of asbestos caused a strong probability of death." (Internal quotation marks omitted.) Plaintiffs further alleged that "defendant's conscious purpose was that asbestos would become trapped in the lungs and bodies of the workers" and defendant "intended bodily harm to plaintiffs." (Internal quotation marks omitted.) *Id.* The appellate court affirmed the trial court's denial of the motion to dismiss, concluding that the claims were not barred by the exclusive remedy provision. *Id.* at 72. Noting the procedural posture of a motion to dismiss, the appellate court found that the allegations were sufficient to allege that the employer directed, encouraged, or committed an intentional tort. *Id.*

¶ 36    Similarly, in *Daniels*, 2022 IL App (2d) 210244, the court considered whether allegations of intentional conduct and a specific intent to harm were sufficient to avoid the bar created by the exclusive remedy of the Compensation Act. Daniels alleged that his injury was caused by his employer, Venta, knowing that he would be injured if he worked on asbestos removal yet instructing him to do it anyway. *Id.* ¶¶ 28-29. He further alleged that Venta's officers had acquired knowledge about the hazards of asbestos exposure and the medically compromising effect of inhaling asbestos. *Id.* Having that knowledge, the company then deliberately, and with specific intent to cause him injury, directed him to work to remove the asbestos-containing materials while intentionally concealing the existence of asbestos because protecting him or informing him of the hazard would jeopardize the defendant's plan to save as much money as possible. *Id.* The court noted that, when an intentional claim is pled to avoid the exclusive remedy, allegations that an injury is "substantially certain" to occur or that there is a "strong probability" that an injury will occur are insufficient, citing *Hartline v. Celotex Corp.*, 272 Ill. App. 3d 952, 955 (1995). *Daniels*, 2022 IL App (2d) 210244, ¶ 27. However, taking the allegations in the light most favorable to Daniels, the court found the allegations sufficient for the claims to proceed. *Id.* ¶ 31.

¶ 37    Here, we conclude that the Estate's allegations, taken as true, and the inferences that can reasonably be drawn from them present a troubling scenario of intentional conduct that the Village knew would lead to injury. *Id.* We reverse the trial court's dismissal of the Estate's complaint on Compensation Act exclusive remedy grounds.

¶ 38                              B. Tort Immunity Act

¶ 39    In its section 2-619(a)(9) motion to dismiss, the Village also argued that it is immune from liability to the Estate under the Tort Immunity Act, specifically section 2-103, which states: "A local public entity is not liable for an injury caused by adopting or failing to adopt an enactment

13

or by failing to enforce any law." 745 ILCS 10/2-103 (West 2022). When interpreting the immunity provision, a court must "ascertain and give effect to the intention of the legislature." *Barnett v. Zion Park District*, 171 Ill. 2d 378, 388 (1996). Legislative intent is ascertained from the plain language of the statute. *Id.* at 389. We do not read into the statute exceptions, limitations, or conditions that conflict with the express legislative intent. *Id.*

¶ 40    The Village reasons that, because the amended complaint was based so heavily on claimed failures to adequately enforce Safety Act regulations, it is immune for its own inaction. The Estate counters with the argument that the Village does not have a duty to enforce the Safety Act regulations but rather has the duty to comply with the Safety Act regulations. It reasons that a governmental agency cannot fail to enforce a law that it has no duty to enforce. Additionally, the Estate argues that the allegations of Safety Act violations are merely *evidence* of noncompliance with the regulations and not of intent to injure. The Estate also notes, correctly, that the amended complaint alleges conduct that goes well beyond Safety Act violations alone.

¶ 41    We do not believe that the immunity afforded local governments under section 2-103 applies in this matter. Generally, the immunity afforded to a local government under section 2-103 is for doing nothing in a given scenario. *Anthony v. City of Chicago*, 382 Ill. App. 3d 983, 993 (2008) (section 2-103 of Tort Immunity Act applied where the failure of the building department to follow up on permit compliance allegedly caused trampling of patrons during an emergency exit); *Pouk v. Village of Romeoville*, 405 Ill. App. 3d 194, 198 (2010) (section 2-103 of the Tort Immunity Act applied based on allegations the village failed to order a homeowner to trim his bushes to comply with its visibility ordinance and the lack of visibility caused an accident). But, for purposes of section 2-103, courts have recognized a distinction between *nonenforcement* and *noncompliance*. *Salvi v. Village of Lake Zurich*, 2016 IL App (2d) 150249, ¶ 41.

14

¶ 42         In *Salvi*, the plaintiff filed suit against the Village of Lake Zurich, alleging in relevant part that Lake Zurich's failure to follow an ordinance resulted in a pond overflowing its banks and damaging their property. *Id.* ¶ 44. The appellate court held that section 2-103 immunity did not apply because the allegations were not based on Lake Zurich's failure to enforce the law but on Lake Zurich's failure to comply with the law itself. *Id.* Specifically, the "allegations have nothing to do with failing to *enforce* the law; they have everything to do with failing to *follow* the law." (Emphases in original.) *Id.*

¶ 43         As in *Salvi*, here the Estate does not allege that the Village was doing nothing and failed to enforce the Safety Act regulations. Instead, the Estate alleges that the Village knowingly and actively required Matthew to enter the water vault, despite the Village's lack of compliance with the applicable safety laws, which resulted in his death.

¶ 44         The cases relied upon by the Village in support of the application of section 2-103 are distinguishable. In *Reyes v. Board of Education of Chicago*, 2019 IL App (1st) 180593, ¶ 41, the appellate court found that section 2-103 immunity barred the plaintiffs' claim that the defendant school board failed to enforce the Abused and Neglected Child Reporting Act (Reporting Act) (325 ILCS 5/1 *et seq.* (West 2014)). The *Reyes* plaintiffs alleged that the school board took action prior to the child's injury to enforce the Reporting Act—having employees acknowledge their reporting requirements—but that two of the defendant's employees later failed to comply with the Reporting Act, resulting in injuries to a child. *Reyes*, 2019 IL App (1st) 180593, ¶ 41. Section 2-103 applied, as the plaintiffs alleged that the school board had taken prior action to enforce the Reporting Act, but the employees later failed to act accordingly. *Id.* Thus, at the time of the injury, the school board was alleged to be doing nothing, so immunity under section 2-103 applied. *Id.*

15

¶ 45 Further illustrating the distinction between nonenforcement and noncompliance, in *Anthony*, 382 Ill. App. 3d at 992-93, the plaintiffs' claim against the City of Chicago was barred by section 2-103 based on allegations that the City failed to *enforce* the building code and a previous court order. The complaint alleged "the City's course of action was over and the City was doing nothing—which is the subject of section 2-103's immunity for failing to enforce any law." *Id.* at 993.

¶ 46 We conclude that section 2-103 immunity is inapplicable here because the amended complaint does not allege a failure to enforce the Safety Act. Rather, the amended complaint alleges a failure to comply with the Safety Act.

¶ 47                                C. Failure to Plead Causation

¶ 48 Finally, the Village argues that the trial court's dismissal order should be affirmed because the Estate failed to properly plead causation. The trial court deemed it unnecessary to consider that argument, raised pursuant to section 2-615. The Village's motion hinges upon allegations that the Estate pled—in the alternative—against the valve component manufacturers, including allegations that the Village was not properly instructed on the valves' workings, and against IRMA for improper training of Village employees.

¶ 49 The Village's argument is unavailing. First, the Code expressly allows plaintiffs to plead in the alternative. 735 ILCS 5/2-613(b) (West 2022). Second, there can be more than one cause of an injury. *Ney v. Yellow Cab Co.*, 2 Ill. 2d 74, 83-84 (1954); *Kramer v. Szczepaniak*, 2018 IL App (1st) 171411, ¶ 28. To survive a section 2-615 motion to dismiss, a complaint need only plead that the defendant's conduct was a substantial factor in bringing about the injury. *Kramer*, 2018 IL App (1st) 171411, ¶ 28. The Estate's amended complaint adequately alleged that the Village was a substantial factor in bringing about Matthew's injury. As far as the existing amended complaint is

16

concerned, causation is sufficiently pled to survive a motion for failure to state a claim upon which relief can be granted as to the Village.

¶ 50                                III. CONCLUSION

¶ 51        This case prompts the question, "how gross does gross negligence need to be before it becomes tantamount to intentional conduct?" However, we need not decide today whether conduct "substantially certain to cause harm" is sufficient to trigger the no-accident rule, although the bench and bar would benefit from guidance from our supreme court on that issue.

¶ 52        We hold that the Estate sufficiently and plausibly pled intentional conduct by the Village and, therefore, that the WC's exclusivity rule does not defeat the Estate's claims in the context of a motion to dismiss. We express no opinion on the ultimate merits or success of the Estate's claims in the context of summary judgment or trial.

¶ 53        We further hold that the Tort Immunity Act is likewise not a valid basis for dismissal. Finally, we conclude that the Estate has sufficiently pled causation to survive a section 2-615 motion to dismiss.

¶ 54        Reversed and remanded.

¶ 55        PRESIDING JUSTICE HETTEL, dissenting:

¶ 56        I respectfully dissent from the majority's decision to reverse the circuit court's dismissal of the complaint. I find that the Estate failed to sufficiently allege that the Village acted with the specific intent to injure and, therefore, failed to satisfy the no-accident exception to the exclusivity provision of the Compensation Act.

¶ 57        It is well settled that a complaint must allege specific facts to survive a motion to dismiss. See, *e.g.*, *Mayfield v. ACME Barrel Co.*, 258 Ill. App. 3d 32, 34 (1994) ("[C]onclusions of fact or law in [a] complaint which are not supported by specific factual allegations are not taken as true

17

\*\*\*."). As the majority here acknowledges, the Village argues in this appeal that the allegations that the Estate made to show that the Village acted with the specific intent to injure are conclusory and unsupported by specific facts. However, the majority rejects this argument and, citing *Daniels*, 2022 IL App (2d) 210244, and *Handley*, 124 Ill. App. 3d 56, finds that the Estate sufficiently alleged a specific intent to injure.

¶ 58        *Daniels* does not compel the majority's above finding because the allegations in *Daniels* differ from those that the Estate made in this case. Indeed, the majority correctly notes that the *Daniels* court concluded that the plaintiff employee there had sufficiently alleged that his employer had acted with the specific intent to harm him when it directed him to remove scrap materials containing asbestos. *Daniels*, 2022 IL App (2d) 210244, ¶¶ 28, 29. However, the *Daniels* court arrived at this conclusion based, in part, on the plaintiff's allegations that named officers of his employer had been informed of the hazards of asbestos, that these officers knew that people who inhaled asbestos would be medically compromised and suffer immediate bodily harm, and that his employer then directed the plaintiff to remove the scrap materials containing asbestos "while intentionally concealing from him that said materials contained asbestos." *Id.* ¶¶ 28-29. The *Daniels* court further noted that the plaintiff had alleged that his employer's motive for not informing him of the potential harm of the removal work was to protect its plan to perform the overall project "as cheaply as possible." *Id.* ¶ 28.

¶ 59        Here, unlike the plaintiff in *Daniels*, the Estate did not allege specific individuals that acted on behalf of the Village. Nor did the Estate specifically allege that the Village had any particular motive for directing its employees to enter the vault without the required safety precautions or that the Village had intentionally concealed the dangers of entering the vault, which, I believe, would have more fairly given rise to the inference that the Village acted with the specific intent to injure.

18

Compare *id.* ¶¶ 28-29, with *Bercaw*, 258 Ill. App. 3d at 217 (explaining that an employer who "conceals" from its employees a known "certain" injury, but not an employer who merely conceals a "risk" of injury, can be said to have a specific intent to injure and finding, in accordance with this differentiation, that the plaintiffs before it had not shown that the employer had the specific intent to injure). Thus, I find *Daniels* to be unhelpful to the resolution of this appeal.

¶ 60     Additionally, the majority's reliance on *Handley* is improper, in light of the discussion in *Hartline*, 272 Ill. App. 3d 952. In *Hartline*, the court considered whether the plaintiff employee there had sufficiently alleged that the defendant employer had acted with the specific intent to injure, in satisfaction of the no-accident exception to the exclusivity provision of the Compensation Act. *Hartline*, 272 Ill. App. 3d at 954, 955-59. Relevant to the issue, the plaintiff alleged in his operative complaint that the defendant had "intended to kill [him]," had made false representations "with the intent" that he would rely on them and become injured, and had acted with the "conscious purpose" that asbestos would enter his lungs and cause him great bodily harm. (Internal quotation marks omitted.) *Id.* at 955-56.

¶ 61     In analyzing the sufficiency of the above allegations, the *Hartline* court noted that the plaintiff's operative complaint was "nearly identical" to the complaint filed in *Handley*, 124 Ill. App. 3d 56. *Hartline*, 272 Ill. App. 3d at 956. The *Hartline* court more specifically noted that the *Handley* court had determined that the plaintiff employees' complaint, which had alleged, in part, that the defendant employer had "intended to kill the plaintiff and his coworkers," that the "defendant [had known] its representations about the effects of exposure to asbestos dust were false and that the plaintiffs would become ill and die," and that the defendant's "conscious purpose" had been for the asbestos dust to become trapped in the workers' lungs, had sufficiently shown that the defendant had committed an intentional tort. (Internal quotation marks omitted.)

19

*Id.* at 956 (citing *Handley*, 124 Ill. App. 3d at 71-72). The *Hartline* court further noted, however, that, although the *Handley* court had "determined that [the operative] complaint[ ] satisfied the specific intent standard, *** [the] court[ ] did not consider whether the allegations of specific intent were made with sufficient factual specificity." *Id.* The *Hartline* court then found that *Handley* did not "bar [it] from conducting [its] own analysis of the sufficiency of [the] plaintiff's complaint." *Id.* at 957.

¶ 62    While conducting its independent analysis of the sufficiency of the individual counts of the plaintiff's complaint, the *Hartline* court found that multiple counts failed to allege specific details, such as the person who had made representations to the plaintiff regarding the potential harm of asbestos dust, the specific information that the person had communicated to the plaintiff, the means by which the person had communicated said information, when any representations had been made, how and when the defendant had learned that the workers would become ill by being exposed to asbestos, which of the defendant's officers or executive employees had decided that the defendant wanted the workers to be exposed to asbestos dust, and when said officers or executive employees had made said decision. *Id.* at 958-59. The court further found that, consequently, the counts at issue were conclusory and failed to sufficiently allege that the defendant had committed an intentional tort. *Id.* at 959.

¶ 63    Unlike the *Hartline* court, the majority relies upon *Handley* to find that the Estate sufficiently alleged that the Village engaged in intentional conduct, despite the Village's analogous argument on appeal that the complaint alleged no more than factual conclusions on the issue. In line with the court's discussion in *Hartline*, because this court is presented with the issue of whether the Estate alleged specific facts to show that the Village acted with the specific intent to injure, I find that *Hartline* is more instructive than *Handley*.

20

¶ 64        Similar to the plaintiff in *Hartline*, the Estate in this case alleged, in part, that the Village "knowingly sent Matthew to his death"; "had full knowledge" that it needed to comply with applicable safety standards; "intended" for Matthew to enter the underground water vault and thereby become injured; "intentionally, willfully, and wantonly" ignored the applicable safety standards; and "intentionally" failed to properly train, educate, and equip Matthew for the work that he performed. However, like the plaintiff in *Hartline*, the Estate failed to allege more specific details, such as how and when the Village had learned that its workers *would be* harmed by its conduct, which of the Village's officers or employees had decided that the Village wanted its workers to be harmed by sending them into the underground water vault without the required safety precautions, and when said officers or employees had made said decision. In the absence of these additional details, I find that the Estate's allegations are conclusory and unsupported by allegations of specific facts that show that the Village acted with the requisite specific intent.

¶ 65        In arriving at my finding, I acknowledge that the Estate did allege additional facts regarding the Village's repeated safety violations. Namely, the Estate can be said to have specifically alleged that the Department of Labor was the entity that had communicated to the Village that the Village had failed to properly train its employees and that its employees were exposed to hazards that were immediate and dangerous to life. The Estate can also be said to have specifically alleged that the Village learned from the citations that its employees could *potentially* be harmed because of its failure to properly train them. However, that the Village knew that there was a potential for such harm does not, alone, mean that the Village specifically intended that its employees become injured. See *Copass*, 211 Ill. App. 3d at 214 ("[W]e hold that an employee alleging an intentional tort against his employer *** must allege that the defendant acted deliberately with specific intent to injure the employee."). Thus, I find that, despite their specificity, the Estate's allegations

21

regarding the Village's repeated safety violations do not help sufficiently show that the Village acted with the specific intent to injure.

¶ 66    As a final matter, I would like to note that my position in this appeal is further compelled by our courts' understanding of the exclusivity provision of the Compensation Act, which states the following, in pertinent part:

> "(a) Except as provided in Section 1.2, no common law or statutory right to recover damages from the employer *** for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided ***." 820 ILCS 305/5(a) (West 2022).

As the majority similarly articulates, the exclusivity provision "is part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, he is relieved of the prospect of large damage verdicts." *Meerbrey*, 139 Ill. 2d at 462. In *Kordas*, 2025 IL App (3d) 240482, ¶ 20, this court recently explained that, "[b]ecause the [Compensation] Act imposes liability without fault and consequently prohibits common-law claims by employees against their employers, any exception to the exclusive remedy provision that would allow it to be circumvented must be *strictly construed*." (Emphasis added and internal quotation marks omitted.)

¶ 67    By finding here that the Estate's conclusory allegations sufficiently show that the Village acted with the specific intent to injure, the majority fails to strictly construe the exclusivity provision of the Compensation Act. This case is not only tragic; the Estate's allegations also elicit feelings of both disbelief and anger. That said, I cannot ignore that, by its very language, the exclusivity provision already contemplates events even as tragic as employee deaths in striking its delicate balance between employer and employee interests. See 820 ILCS 305/5(a) (West 2022)

22

(limiting the recovery of damages in the event of the "death" of an employee). For the foregoing reasons, I would affirm the circuit court's dismissal of the complaint with prejudice, based on the Compensation Act.

*Heiden v. Village of Westmont*, **2026 IL App (3d) 250071**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 23-LA-1266; the Hon. Timothy J. McJoynt and the Hon. Maureen R. Riordan, Judges, presiding. |
| **Attorneys for Appellant:** | Devlin Joseph Schoop, of Laduzinsky & Associates, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Justin K. Beyer and Elizabeth A. Thompson, of Saul Ewing LLP, of Chicago, for appellee. |